(No. 33939.—

EDWIN S. PETTERSON *et al.,* Appellees, *vs.* THE CITY OF NAPERVILLE, Appellant.

*Opinion filed September 25, 1956.*

234

WILLIAM R. FRIEDRICH, of Naperville, and FRANK M. OPEKA, of Chicago, for appellant.

LEREN & BUREK, of Wheaton, (ALEXANDER J. BUREK, of counsel,) for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The city of Naperville, defendant, appeals from the judgment and decree of the circuit court of Du Page County finding and declaring that its "Subdivision Control Ordinance," enacted June 21, 1954, is arbitrary, discriminatory, unreasonable and void, and restraining and enjoining it from enforcing the provisions of the ordinance against the plaintiffs, Edwin S. Petterson and Dorothy Petterson. The trial court has certified that the validity of a municipal ordinance is involved and that the public interest requires direct appeal.

Count 1, of plaintiffs' complaint for a declaratory judgment, alleged that plaintiffs are the owners of a certain tract of land located in the unincorporated area of Du Page County and adjoining the corporate limits of the city of Naperville; that the county of Du Page had by resolution adopted rules and regulations concerning plats of subdivisions, dedications and vacations as shown in the exhibit attached to the complaint; that plaintiffs platted their property for subdivision purposes and submitted the plat, together with its statements of improvements, to the county board of Du Page County which approved the plat; that the city of Naperville had, pursuant to the provisions of article 53 of the Revised Cities and Villages Act of the State of Illinois (Ill. Rev. Stat. 1945, chap. 24, pars. 53—1, 53—2, 53—3,) passed ordinance number A-183 on March 3, 1947, which was entitled "Creating a Plan Commission" and had also passed, pursuant to the same statutory authority, ordinance number A-241 entitled, "Subdivision Control Ordinance" on June 21, 1954; that the provisions of ordinance A-241 made no distinction between properties located within the corporate limits and those in areas within one and one-half miles outside said limits; that said subdivision control ordinance required additional improvements and made requirements different from those of the county of Du Page; that said ordinance was void as being beyond

the power and jurisdiction of the city of Naperville; and prayed that the court so find and declare. In count 2 of their complaint, which seeks injunctive relief, plaintiffs realleged the facts concerning the passage of the ordinances and the submission of their plat to the county authorities and further stated that they submitted their plat to the plan commission of the city of Naperville; that the commission had approved the plat, except that it had required the installation of curbs and gutters along the proposed streets of the subdivision; that this requirement was unnecessary under the circumstances and created an unreasonable burden upon the plaintiffs at a great cost to them and without any relationship to the public health, safety, morals, comfort and general welfare; and that the ordinance constitutes an arbitrary discrimination against the plaintiffs and was void as applied to their property.

In answer to count 1 of the complaint, the defendant denied the allegations thereof, except those pertaining to the ownership of the property, the existing statutory provisions, and the passage of the ordinances. The answer to count 2 admitted the passage of the ordinances, that proceedings were held before the plan commission and its refusal to give final approval to the plat because of the lack of provision for curbs and gutters, and denied all other allegations.

The special master, to whom the cause was referred to take proofs and report findings, found that the proof failed to show any distinction between the plaintiffs' property and other property controlled by the ordinance, and that the ordinance was reasonable as applied thereto. However, the master recommended that the relief sought by the plaintiffs be granted on the grounds that the ordinance in question constituted an unlawful delegation of legislative authority; that the necessary standards to be followed by the plan commission were not specifically set forth in the ordinance which permitted arbitrary action by the com-

mission, not subject to review by the legislative authority, and that requiring a property owner outside the city limits to install local improvements constituted an illegal discrimination. Both parties to the proceedings filed objections to the master's report, which were denied and allowed to stand as exceptions. The court overruled the defendant's exceptions to the report, and sustained the exceptions of the plaintiffs to the finding that the ordinance was reasonable. By its decree the court declared the ordinance unreasonable and unconstitutional and enjoined the defendant from enforcing any of its provisions as to plaintiffs, and directed the city of Naperville to approve the plat.

The facts of this case are not in dispute. The city of Naperville is situated in Du Page County, approximately twenty miles west of the corporate limits of the city of Chicago, a city of more than 500,000 population. On March 3, 1947, it adopted ordinance number A-183 creating a plan commission pursuant to authority granted by the City Planning Commission Act passed in 1921. (Laws of 1921, p. 260; Ill. Rev. Stat. 1945, chap. 24, pars. 53—1, 53—2, 53—3.) This ordinance provided that the commission shall have the power to prepare and recommend to the city council a comprehensive plan of public improvements looking to the present and future development and growth of the city, including reasonable requirements with reference to streets, alleys and public grounds within the corporate limits and within contiguous territory outside of and distant not more than one and one-half miles from such limits. On June 21, 1954, the city adopted ordinance number A-241, entitled, "Subdivision Control Ordinance," as part of the official plan of the city. This ordinance contained provisions and regulations governing the subdividing and platting of lands lying within the corporate limits and one and one-half miles beyond, including requirements as to location of streets, their width, surface, and curb and gutter. The ordinance recited that it was adopted for the

purpose of the present and future development of the city and for the promotion of the public health, safety, comfort, morals and welfare of persons living within the territory governed.

The plaintiffs, husband and wife, are the owners of a 20-acre tract of land, of which the north line and portions of the south and east lines adjoin the corporate limits of the city. They caused a plat of the proposed subdivision of their land to be prepared, and submitted it, together with topographical and other information, to the county board of Du Page County for approval. The committee of the county board approved the plat. Plaintiffs then submitted their plat to the city council of the city of Naperville, which referred the plat to its plan commission for consideration. The plat, as submitted to the municipal authorities, complied with Du Page County regulations and included bituminous streets, 20 feet in width, without curbs and gutters, and contemplated open ditch drainage facilities. The city plan commission refused to approve the plat unless one of the proposed streets was extended to the west line of the subdivision to provide for possible future extension of the way beyond the proposed subdivision, and unless the width of the bituminous streets was increased to 25 feet, and curb and gutter and suitable storm water drainage facilities were provided. The plaintiffs agreed to the extension of the street in question and to increase the width of the bituminous streets to 25 feet, but refused to comply with the curb and gutter and storm water drainage requirements. The plan commission then refused to approve the tentative plat.

At the hearing before the master the plaintiffs presented testimony to show that the cost of constructing the improvements to meet the city requirements would be considerably greater than the cost of providing open gutters and driveway culverts. The chief engineer of the Du Page County highway department testified that if curbs and

gutters were installed, an underground system of drainage in the form of storm sewers would also be necessary, involving a total cost of $19,810; that the culverts necessary under the county requirements would cost only about $880. The engineer, who prepared the plat for plaintiffs, testified that the contour line indicated that surface drainage would flow westward to the Du Page River and away from the city of Naperville. The plaintiffs also offered testimony tending to show that streets outside the city are maintained by the township highway commissioner and not by the city, and that the highway commissioner lacked equipment to maintain the drainage system contemplated by the city. However, on cross-examination, one of plaintiffs' engineer witnesses admitted that under normal conditions the cost of maintaining the storm sewers would be less than the cost of maintaining the open ditches and would require less maintenance service by the township.

One of the defendant's witnesses, a sanitary engineer employed by the State Department of Public Health, testified that surface water drainage in cities, or in areas adjacent thereto, has a direct relation to public health; that there tends to be an increased concentration of waters in built up areas; that in areas where septic tanks are used such tanks do not function properly if the ground becomes saturated with surface waters, and that there is a real hazard to health in the admixture of sewage and surface water. On cross-examination he stated that he considered the county requirements a compromise with adequacy and that surface water drainage within one and one-half miles of a city has a direct bearing on health. The defendant also produced a witness, whose occupation was the construction of roads, who testified that the cost of maintaining roads with curbs and gutters is negligible compared with the expense of maintaining those with open ditches.

The principal questions here presented are: (1) Does the subdivision control ordinance of the city of Naperville

exceed the power and authority conferred by the statute? (2) Assuming authority to enact that ordinance, is the ordinance as written constitutional, especially as applied to plaintiffs and their property? In discussing these questions we must keep in mind that only the validity of the subdivision control ordinance is questioned here.

The answer to the first question involves the construction of the applicable statute which in turn depends upon ascertaining the legislative intent and giving it proper effect. In 1921 the General Assembly passed an act entitled, "An Act in relation to plan commissions in cities, villages and incorporated towns." (Laws of 1921, p. 260.) Section 1 of the statute specified that every municipality may provide for the creation of a plan commission and prescribed the manner of its formation. Section 2 defined the powers of the plan commission authorized by section 1, and in subsection (1) provided that the commission has the power to prepare and recommend to the corporate authorities a comprehensive plan of public improvements looking to the present and future development of the municipality, such plan to be known as the official plan of the municipality, including "reasonable requirements in reference to streets, alleys and public grounds in unsubdivided lands within the corporate limits and in contiguous territory outside of and distant not more than one and one-half miles from such limits, and not included in any city, village or incorporated town, such requirements to be effective whenever such lands shall be subdivided after the adoption of such plan." Subsections (2), (3) and (4) of section 2 provided for the recommendation of specific improvements in pursuance of the plan, the giving of aid to the municipal officials charged with the direction of projects for improvements embraced within the plan and the exercise of such other powers, germane to the granted powers as might be conferred by the corporate authorities. Section 3 provided: "No map or plat of any subdivision presented for record,

affecting land (1) within the corporate limits of any municipality which has adopted heretofore or shall adopt hereafter an official plan in the manner prescribed in this article, or (2) within contiguous territory which is not more than one and one-half miles beyond the corporate limits of an adopting municipality, and not included in any municipality, shall be entitled to record or shall be valid unless the subdivision shown thereon provides for streets, alleys, and public grounds in conformity with the applicable requirements of the official plan." The act as originally passed was not amended until 1949 when subsections (2), (3) and (4) of section 2 were renumbered and became subsections (3), (4) and (5) and a new paragraph was added as subsection (2) which applies to municipalities of more than 500,000 inhabitants or municipalities lying wholly or partly within a radius of 30 miles from the corporate limits of municipalities of more than 500,000 inhabitants. No further changes were made in the law up to and including the time of the passage of the disputed ordinance.

The same session of the legislature which amended the City Plan Commission Act amended the Plat Act by adding to section 2, immediately after the first sentence thereof, the following: "Said plat shall be submitted to the city council of the city or board of trustees of the village or town or to the officer designated by them, for their or his approval, if the land subdivided is located within the corporate limits of any such city, village or town or within contiguous territory which is affected by an official plan or part thereof, of any city, village or town. If the land subdivided is located outside the corporate limits of any city, village or town and is not affected by such official plan, or part thereof, the plat shall be submitted to the county board of the county in which the land is located for its approval." (Ill. Rev. Stat. 1949, chap. 109, par. 2.) Prior to 1945, section 13 of the Recorders Act (Ill. Rev. Stat. 1943, chap. 115, par. 13,) had provided that it was

unlawful for any recorder to record any map, plat or subdivision of any land situated in an incorporated city until the same had been approved by the legislative authority of the municipality. In 1945, section 13 was amended to provide that recording was prohibited unless the plat was properly approved where the land was situated within the corporate limits, or within one and one-half miles of the corporate limits of any municipality which had adopted a city plan and is exercising the special powers authorized by sections 53—1 to 53—3, inclusive, of the Revised Cities and Village Act. (Ill. Rev. Stat. 1945, chap. 115, par. 13.) These amendatory provisions remained in force at the time of the passage of the Naperville subdivision control ordinance.

In construing the provisions of a statute it is not only proper, but often necessary, to consider the provisions of other statutes relating to the same subject matter for the purpose of determining legislative intent. (*Hepner* v. *County Board of School Trustees,* 8 Ill.2d 235, at pages 241 and 242.) A consideration of the above statutes and their amendatory provisions reveals the clear intention of our legislature to grant to municipalities adopting an official plan exclusive control and jurisdiction over the subdivision of lands located not more than one and one-half miles beyond the corporate limits of the municipality. Cities ordinarily have no jurisdiction beyond their corporate limits, and municipal ordinances are confined in their application to the territory of the municipality adopting them. (*Dean Milk Co.* v. *City of Elgin,* 405 Ill. 204; *City of Rockford* v. *Hey,* 366 Ill. 526.) But the legislature may, if it sees fit, confer special extraterritorial powers on municipalities, and when it does so the courts recognize and give effect to them. (*City of West Frankfort* v. *Fullop,* 6 Ill.2d 609; *Chicago Packing and Provision Co.* v. *City of Chicago,* 88 Ill. 221.) The exercise of such extraterritorial powers by a municipality is, of course, always sub-

ject to the requirement that the ordinance passed pursuant to legislative authority constitutes a valid exercise of the police power, and bears a reasonable and substantial relation to the public health, safety or general welfare. (*City of Park Ridge* v. *American National Bank and Trust Co.* 4 Ill.2d 144.) It is true that the legislature has given to counties certain powers relative to maps, plats and subdivisions. This power was first conferred in 1915 (Laws of 1915, p. 334-335,) and enlarged in 1949. (Ill. Rev. Stat. 1949, chap. 34, par. 25.09.) However, there is nothing in these legislative provisions relative to the powers of counties which indicates that it was not the intention of the legislature to give exclusive control in those areas within one and one-half miles outside the territorial limits of a municipality to municipalities which have an official plan in effect in such territory. Thus, even though the county of Du Page adopted a resolution regulating subdivisions in the county, the lands in question here, being within the limits prescribed by the City Plan Commission Act and the subdivision control ordinance, are subject to the exclusive control and jurisdiction of the city of Naperville so far as the subdivision of lands and the approval of maps and plats of such subdivisions are concerned.

Plaintiffs contend that the ordinance as drawn is void as an exercise of power by the defendant beyond the grant of the statute; that the statute by granting the right to include "reasonable requirements with reference to streets, alleys, and public grounds," does not contemplate that a city may include such requirements as curbs and gutters or the other improvements prescribed by the ordinance. In this connection the plaintiffs rely on those cases which hold that the legislative powers of cities are strictly construed, and if there is any reasonable doubt as to the existence of the power, the doubt must be resolved against the municipality. But the primary object of statutory construction is to ascertain and give effect to legislative intent.

In ascertaining legislative intent, the courts should consider the reason or necessity for the enactment and the meaning of the words, enlarged or restricted, according to their real intent. Likewise the court will always have regard to existing circumstances, contemporaneous conditions, and the object sought to be obtained by the statute. *People ex rel. Holvey* v. *Kapp,* 355 Ill. 596; *Chicago Packing and Provision Co.* v. *City of Chicago,* 88 Ill. 221.

Subsection 2 of section 2 of the City Plan Commission Act (Ill. Rev. Stat. 1953, chap. 24, par. 53—2(2),) in force at the time of the adoption of the subdivision control ordinance, grants to planning commissions in municipalities of more than 500,000 inhabitants, or in municipalities lying wholly or partly within a radius of thirty miles from the corporate limits of municipalities of more than 500,000 inhabitants, the power to recommend to the corporate authorities a plan or plans for the development and redevelopment of the municipality and contiguous unincorporated territory not more than one and one-half miles beyond the corporate limits of the municipality, and further empowers the commission "To provide for the health, safety, comfort and convenience of the inhabitants of the municipality and contiguous territory, such plan or plans may establish reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment, including reasonable requirements for public streets, alleys, ways for public service facilities, parks, playgrounds, school grounds, and other public grounds." We believe that the power to prescribe reasonable requirements for public streets in the interest of the health and safety of the inhabitants of the city and contiguous territory includes more than a mere designation of the location and width of streets as plaintiffs seem to contend. The legislature undoubtedly had in mind the complex problems connected with the development of territory contiguous to cities as bearing on the health and safety of all inhabitants

within and without the municipality; that in such territory, in the interest of uniformity, continuity, and of public health and safety, the streets should be constructed in such a way as to afford reasonably safe passage to the traveling public and provide reasonable drainage in the interests of health. Plaintiffs made no objection to the paving requirements set forth in the ordinance and agreed to comply with those provisions, apparently considering them to be within the powers granted. Considering the expressed object and purpose of the legislation, it is our conclusion that the provisions of the ordinance requiring curbs and gutters and proper drainage are within the powers conferred by the statute.

The trial court found that the ordinance, as applied to plaintiffs and their property, was arbitrary, unreasonable and discriminatory and had no reasonable relation to the public health, safety or general welfare, and that it was therefore unconstitutional and void. The only proof offered to sustain this finding was evidence which compared the cost of complying with the county regulations and the cost of complying with the requirements of the subdivision control ordinance, together with some testimony that the surface waters drained westward to the river and not toward the city. The fact alone that the cost of curbs and gutters and the drainage facilities prescribed by the subdivision control ordinance would be greater than the cost of open ditches and culverts forms no basis for the finding that the ordinance is arbitrary, unreasonable or discriminatory. There is no proof whatever to show that the ordinance affects plaintiffs' property any differently than other property within the area in question or that it imposes unreasonable or excessive burdens upon the plaintiffs. One who challenges the validity of an ordinance as arbitrary and unreasonable must prove by clear and affirmative evidence that the ordinance constitutes arbitrary, capricious and unreasonable municipal action; that there is no permissible

interpretation which justified its adoption, or that it will not promote the safety and general welfare of the public. (*First National Bank of Lake Forest* v. *County of Lake*, 7 Ill.2d 213.) The fact alone that the ordinance may operate to impose burdens or restrictions on the property which would not have existed without the enactment of the ordinance is never determinative of the question of validity. (*Miller Brothers Lumber Co.* v. *City of Chicago*, 414 Ill. 162.) The privilege of the individual to use his property as he pleases is subject always to a legitimate exercise of the police power under which new burdens may be imposed upon property and new restrictions placed upon its use when the public welfare demands. (*2700 Irving Park Bldg. Corp.* v. *City of Chicago*, 395 Ill. 138.) Plaintiffs offered no convincing proof to support their contention that the ordinance bears no reasonable relation to the public health, safety or general welfare. Such proof as was adduced on this question was introduced by defendant and supports the opposite conclusion. The trial court erred in holding the ordinance unconstitutional on the ground that it was arbitrary, unreasonable and confiscatory and without proper relation to the legitimate objects of the police powers.

Plaintiffs also suggest that the ordinance is unconstitutional because section 4 thereof constitutes an unlawful delegation of legislative power by the city to the plan commission in that it gives the commission the power to grant a variance from the requirements of the ordinance which sets forth no standards or guides to aid the commission in determining whether or not a variance shall be permitted. We doubt that plaintiffs are in a position to urge this objection because there is no evidence that they requested a variance or sought to avail themselves of the provisions of section 4. (Cf. *People* v. *McBride*, 234 Ill. 146, 165, 166.) However, there is no merit in the contention. Section 4 provides that "where the subdivider can show that

a provision of the Standards of Design or required Improvements as set forth in Section 3 would cause unnecessary hardship if strictly adhered to, and where, because of topographical or other conditions peculiar to the site or surrounding condition, and in the opinion of the Plan Commission a departure may be made without destroying the intent of such provisions, the Plan Commission may approve a variance. Any variance approved shall be stated in writing in the minutes of the Plan Commission with the reasoning set forth upon which the variance was considered justified." Subsection H of section 5 of the ordinance provides that after approval of the final plat of subdivision by the plan commission, it shall submit the approved plat to the city council together with a letter of transmittal calling the attention of the council to all variances (if any) approved by the plan commission together with its reasons therefor. Subsection I of section 5 provides that "When and if the City Council is satisfied with the Final Plat and with all improvements, conditions and documents pertaining to the subdivision, the Council shall by Resolution approve said plat * * *." From these provisions it appears that the action of the plan commission in recommending a variance is advisory only and that the final determination is made by the proper legislative authority. Section 4, therefore, involves no unlawful delegation of legislative power.

Plaintiffs further urge that the subdivision control ordinance is unconstitutional because it amounts to either taxation without the consent of the taxpayers, or to an exercise of the power of eminent domain without providing compensation to the property owner for the property taken for public use; that if the statute is construed as providing for a form of taxation or special assessment for local improvements, it is void as violating the constitutional provision for uniformity of taxation; and that if the power exercised thereunder is a power of eminent domain, it vio-

lates the constitutional requirement that private property shall not be taken for public use without just compensation. This argument ignores the fact that this is not a proceeding initiated by the city for the construction of a local improvement, or to take property under the law of eminent domain. It is a lawsuit in which the plaintiffs seek approval of a proposed plat of a subdivision under an ordinance which exacts compliance with certain requirements as a condition precedent to approval. They cite in support of this contention the case of *City of Chicago* v. *Larned*, 34 Ill. 203, which involved an assessment for improvements made by the city council on the basis of the frontage of the lots upon the street to be improved. There the court held that under the provisions of the constitution of 1848, then in effect, all taxes were subject to the principles of equality and uniformity, and since this special assessment violated these constitutional provisions, it was not a tax, but an exercise of the power of eminent domain for which just compensation must be made; that though compensation could be made by benefits, when these were exhausted it then became a question of taxation, and the principles of equality and uniformity must apply; that the assessment of injuries and benefits is a judicial proceeding not to be made by a city council and that the purported assessment was void. Since the adoption of our present constitution, however, the power to levy and collect special assessments is regarded as a branch of the taxing power and the assessment is regarded as a species of taxation. (*Chicago and Alton Railroad Co.* v. *City of Joliet*, 153 Ill. 649, 654.) The case at bar does not involve the imposition of a tax by the municipal authorities, but rather involves the imposition of regulatory provisions by way of the exercise of the police power through an ordinance requiring certain conditions precedent to the subdivision of lands and the approval of plats thereof. The validity of the ordinance is to be tested, neither by the principle of uniformity of taxation

nor by the law of eminent domain, but rather by the settled rules of law applicable to cases involving the exercise of police powers. The fact that the exercise of such powers imposes certain burdens, or prevents the most profitable use of the property in private hands, does not of itself render the legislation invalid as a taking of the property without just compensation. (*City of West Frankfort* v. *Fullop*, 6 Ill.2d 609.) The imposition of reasonable regulations as a condition precedent to the subdivision of lands and the recording of plats thereof is not a violation of the constitutional requirement of uniformity of taxation or tantamount to the taking of private property for public use without just compensation.

We find that the judgment of the circuit court of Du Page County was erroneous and it must be reversed.

*Judgment reversed.*