THE CITY OF URBANA, Plaintiff-Appellant, *v.* THE COUNTY OF CHAMPAIGN *et al.*, Defendants-Appellees.

Fourth District   No. 14720

Opinion filed August 11, 1978.

Jack Waaler, City Attorney, of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana, and Greaves, Lerner & Gadau, of Champaign, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from the involuntary dismissal of the City of Urbana's (City) complaint for a declaratory judgment praying that the developer of a Planned Unit Development (PUD) within 1½ miles of its city limits be required to obtain the necessary approvals required by the City ordinances. The City argues that the dismissal of the complaint was improper. We agree and reverse and remand for reinstatement of the complaint.

The essential facts in this case are not in dispute. The developer, R & T, Inc., a Delaware corporation ( R & T), owns approximately 50 acres of undeveloped property outside the corporate limits of Urbana, Illinois, but within 1½ miles of the city. Pursuant to the Champaign County (County) zoning ordinance, the developer sought and obtained approval from the County for a PUD in this area. The development allegedly included a plan for a road which the City contends would be a dedicated public street. R & T contends the street has not been so dedicated.

The issue of whether a municipality may regulate the construction of a PUD within the 1½-mile zone is a matter of first impression in Illinois. The parties concede that if this matter were purely a question of zoning, the county's zoning authority would preempt that of the city even within the 1½-mile zone. (*City of Canton v. County of Fulton* (1973), 11 Ill. App. 3d 171, 296 N.E.2d 97.) The parties also concede that if this matter was a typical subdivision development, rather than a PUD, the City of Urbana's subdivision ordinance would govern the regulation of construction within the 1½-mile contiguous zone, even if it conflicted with the County's ordinance. *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 137 N.E.2d 371.

The thrust of the argument presented by the developer and the County is that the PUD is not a subdivision and thus the City's subdivision ordinance governing regulation of construction is inapplicable. It is necessary to set forth the statutory provisions from which the City derives its regulatory authority as well as a few definitions.

The relevant portions of the Illinois Municipal Code, which enable municipalities to develop a comprehensive plan for the present and future development or redevelopment of the municipality, are as follows:

"The plan, as recommended by the plan commission and as thereafter adopted in any municipality in this state, may be made applicable, by the terms thereof, to land situated within the

corporate limits and contiguous territory not more than one and one-half miles beyond the corporate limits and not included in any municipality. Such plan may be implemented by ordinances (a) establishing reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment in respect to public improvements as herein defined; (b) establishing reasonable requirements governing the location, width, course, and surfacing of public streets and highways, alleys, ways for public service facilities, curbs, gutters, sidewalks, street lights, parks, playgrounds, school grounds, size of lots to be used for residential purposes, storm water drainage, water supply and distribution, sanitary sewers, and sewage collection and treatment; * * *." Ill. Rev. Stat. 1975, ch. 24, par. 11—12—5(1).

The City of Urbana, pursuant to this statutory authority, adopted a subdivision ordinance which states its purpose to be:

"[C]ontrolling future development of the city and for the promotion of the public health and safety, comfort, morals, and welfare of persons living within the territory governed by the city, the provisions and regulations in this chapter shall govern the subdivision and platting of lands lying within the corporate limits of the city as now or hereafter existing and, to the extent that such provisions and regulations may be applicable, shall also govern the subdivision in platting of lands lying within contiguous territory which is not more than 1½ miles beyond the corporate limits of the city." Urbana City Ordinance, ch. 30, §30.1.

The definition of "subdivision," although not defined in the Municipal Code, was set forth in the City's ordinance:

"For the purposes of this chapter, the word 'subdivision' shall mean the dividing of a tract of land into two or more lots, parcels, or tracts for the purpose, either immediate or future, of sale or building development, including a resubdivision for any such purpose." Urbana City Ordinance, ch. 30, §30.2.

The developer and the County contend that the PUD in this case is not a subdivision since there was no division of land into two or more lots. They would narrowly construe the term "subdivision" to cover only those situations where land is, in fact, divided for the purposes of development or resale.

A PUD is a hybrid. It combines both zoning and subdivision regulations for the purpose of developing large tracts of land. Basically, this concept involves the development of land as a unit where it is desirable to apply regulations more flexible than those pertaining to other zoning classifications and to provide for a diversification in the location of

structures and other site qualities. (*Millbrae Association for Residential Survival v. City of Millbrae* (1968), 262 Cal. App. 2d 222, 69 Cal. Rptr. 251.) Thus, the regulation of a PUD does not fit neatly into either the County's zoning authority or the City's authority over subdivisions.

Champaign County has attempted to regulate PUDs by including regulations in its county zoning ordinance. The City of Urbana also has regulations governing PUDs and those regulations are a part of the City's zoning ordinance. The County therefore concludes that since they have primary authority for zoning and since the Urbana PUD regulations are "housed" in the Urbana zoning ordinance, they have the authority to regulate this PUD. This reasoning does not persuade. The County, in reaching this conclusion, has sought to expand its statutory authority by placing a pure zoning label on the hybrid concept of PUD, and has ignored the fact that Urbana is not prevented from regulating this area by means of its subdivision ordinance.

Although the trial court's memorandum opinion noted that a pure zoning label should not be placed on a PUD, the result reached in the opinion does just that. In effect, the trial court's order holds that the County's zoning authority preempts any regulation of a PUD in the contiguous zone by the City. This result is clearly an unwarranted extension of the County's zoning authority.

The main contention in this case appears to be that the PUD cannot be classified as a subdivision because the 50-acre tract on which it is to be developed has not and supposedly will not be divided into two or more parcels. That narrow construction of the definition, however, ignores the reality of the development as well as the remainder of the City's definition which indicates that one of the purposes of a subdivision is as a building development. Clearly a PUD, as its name implies, has as its purpose the development of a tract of land with buildings and the necessary support facilities. The fact that a PUD does not originate from a division of land should not serve to elevate the manner in which a PUD is created over the substance of what it is in fact. Although the PUD does not technically conform to the City's definition of a subdivision, its ultimate purpose conforms to one of the purposes in that definition.

The County argues that the term "subdivision" is implicitly defined in the plat act (Ill. Rev. Stat. 1975, ch. 109, par. 1 *et seq.*). Section 1(a) of that act provides:

> "Except as otherwise provided in subparagraph (b) of this Section, whenever the owner of land subdivides it into 2 or more parts, any of which is less than 5 acres, he must have it surveyed and a plat thereof made by a Registered Land Surveyor, * * *."

Ill. Rev. Stat. 1975, ch. 109, par. 1(a).

The County contends that if the land is not divided into two or more

parts, any of which is less than five acres, there is no subdivision. This argument, however, ignores the fact that this section of the plat act does not specifically define the term "subdivision" and only notes the specific criteria for which plats are required. It is possible that land larger than five acres and not divided into two or more parts could be considered as a subdivision. Thus, the County's argument that the plat act furnishes the definition of "subdivision" is without merit.

Clearly, the City has an interest in the development of the area if it is ever to be annexed to the city. However, even if the area is not annexed, the City has a legitimate interest. The Illinois Supreme Court in *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 137 N.E.2d 371, noted the importance of a city's authority to regulate the development of areas contiguous to the city:

> "We believe that the power to prescribe reasonable requirements for public streets in the interest of the health and safety of the inhabitants of the city and contiguous territory includes more than a mere designation of the location and width of streets as plaintiffs seem to contend. The legislature undoubtedly had in mind the complex problems connected with the development of territory contiguous to cities as bearing on the health and safety of all inhabitants within and without the municipality; that in such territory, in the interest of uniformity, continuity, and of public health and safety, the streets should be construed in such a way as to afford reasonably safe passage to the traveling public and provide reasonable drainage in the interest of health. * * * Considering the expressed object and purpose of the legislation, it *is* our conclusion that the provisions of the ordinance requiring curbs and gutters and proper drainage are within the powers conferred by the statute." 9 Ill. 2d 233, 245-46, 137 N.E.2d 371, 378.

In addition, an opinion by this court has noted that the development of a large area for a PUD can and will have a substantial impact upon a municipality. *Johnny Bruce Co. v. City of Champaign* (1974), 24 Ill. App. 3d 900, 321 N.E.2d 469.

Although this PUD does not fit neatly into the City's definition of "subdivision," the end result will be the same no matter what the classification. It will be necessary for the developer to build streets, sidewalks and drainage facilities irrespective of whether the area is classified purely as a zoning matter or as a subdivision matter. The engineering standards in the development of these improvements are more in the nature of subdivision regulations and controls as opposed to zoning matters that are concerned primarily with the use and density of the developed property.

Although not briefed or argued by the parties, the result we reach is in

accord with the concept of home rule. The City of Urbana is a home rule unit with "* * * the power to regulate for the protection of the public health, safety, morals and welfare * * *." (Ill. Const. 1970, art. VII, §6(a).) Section 6(c) of article VII provides "[i]f a home rule county ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction."

The constitutional debates note that, in the event of a conflict, the municipal ordinance shall prevail within the geographic area which it lawfully covers. The committee which proposed this section stated its belief that " 'at this point in Illinois, municipalities are by far the most important form of general-function local government unit.' " The committee therefore resolved such conflicts in favor of municipal ordinances. Ill. Const. 1970, art. VII, §6(c), Constitutional Commentary, at 24 (Smith-Hurd 1973).

The City's subdivision ordinance lawfully covers the geographic area comprising the 1½-mile contiguous zone adjacent to the City. Thus, under the concept of home rule, it is quite clear that a city's subdivision ordinance would prevail over even a home rule county's conflicting zoning ordinance.

Accordingly, the judgment of the circuit court of Champaign County is reversed, and this cause is remanded with directions to reinstate the complaint for further proceedings consistent with this opinion.

Reversed and remanded with directions.

REARDON, P. J., and TRAPP, J., concur.