(No. 51203.—

THE CITY OF URBANA, Appellee, v. THE COUNTY OF CHAMPAIGN *et al.,* Appellants.

*Opinion filed May 18, 1979.*

64

Thomas J. Difanis, State's Attorney, of Urbana (Joseph D. Pavia, Assistant State's Attorney, of counsel), for appellant County of Champaign.

Greaves, Lerner & Gadau, of Champaign, for appellant R & T, Inc.

Jack Waaler, Corporation Counsel for the city of Urbana, of Champaign, for appellee.

Rudnick & Wolfe, of Chicago (Perry J. Snyderman, Theodore A. Shapero, Theodore J. Novak and Steven H. Jesser, of counsel), for *amicus curiae* Home Builders Association of Greater Chicago.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., Deputy State's Attorney, Henry A. Hauser and Morris Alexander, Assistant State's Attorneys, and Daniel Brown, law student, of counsel), for *amicus curiae* County of Cook.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The city of Urbana sought a declaratory judgment and injunction precluding R & T, Inc. (the developer), from implementing a proposal for a planned unit development (PUD), to be constructed within the 1½-mile zone surrounding the city, until the city had approved the plan as conforming to subdivision standards set out in city of Urbana ordinances. The developer had already obtained approval for the PUD from the County of Champaign, and both the developer and the county asserted that city

approval of the development was not necessary. The circuit court of Champaign County agreed and dismissed the complaint; the appellate court reversed and ordered the complaint reinstated for further proceedings (62 Ill. App. 3d 869), and we granted the county and the developer leave to appeal.

Defendant R & T, Inc., owns a 50-acre tract of undeveloped land adjacent to the corporate limits of the city of Urbana on which it proposes to construct the PUD. The Champaign County zoning ordinance provides for PUDs as a special use. (Champaign County Zoning Ordinance, sec. 6.3 *et seq.*) Pursuant to that ordinance the developer submitted its plans to the county and obtained total approval for the project. Thereafter the city informed the developer that notwithstanding county approval the plans must be submitted to the city to insure compliance with city ordinances. The developer refused to seek city approval, and this litigation ensued. The development plan calls for the tract to be bisected by a road which the city asserts will be dedicated as a public street. The developer has asserted in an uncontested affidavit that the tract "has not been divided into lots, nor has a plat of subdivision been prepared, nor is one to be prepared at the present time."

The Illinois Municipal Code enables a municipality to formulate a comprehensive plan for the development of land within municipal boundaries and contiguous areas and to implement the plan by ordinances:

> "Every plan commission and planning department authorized by this division 12 has the following powers and whenever in this division 12 the term plan commission is used such term shall be deemed to include the term planning department:
>
> (1) To prepare and recommend to the corporate authorities a comprehensive plan for the present and

future development or redevelopment of the municipality. Such plan may be adopted in whole or in separate geographical or functional parts, each of which, when adopted, shall be the official comprehensive plan, or part thereof, of that municipality. This plan may include reasonable requirements with reference to streets, alleys, public grounds, and other improvements hereinafter specified. The plan, as recommended by the plan commission and as thereafter adopted in any municipality in this state, may be made applicable, by the terms thereof, to land situated within the corporate limits and contiguous territory not more than one and one-half miles beyond the corporate limits and not included in any municipality. Such plan may be implemented by ordinances (a) establishing reasonable standards of design for subdivisions and for resubdivisions of unimproved land and of areas subject to redevelopment in respect to public improvements as herein defined; (b) establishing reasonable requirements governing the location, width, course, and surfacing of public streets and highways, alleys, ways for public service facilities, curbs, gutters, sidewalks, street lights, parks, playgrounds, school grounds, size of lots to be used for residential purposes, storm water drainage, water supply and distribution, sanitary sewers, and sewage collection and treatment; ***.'' (Ill. Rev. Stat. 1975, ch. 24, par. 11—12—5.)

Pursuant to this statute, the city of Urbana has adopted a comprehensive plan implemented by enactment of a subdivision-control ordinance, applicable within the city and the contiguous 1½-mile zone, prescribing detailed standards for streets, alleys, curbs, sidewalks, drainage systems and sanitary sewers. (City of Urbana Ordinances, ch. 30.) In addition, the city's zoning ordinance contains a section asserted by the city to regulate PUDs within the 1½-mile zone. That section incorporates by reference the street standards of the subdivision ordinance. (City of Urbana Ordinances, art. XXIV, sec. 30.) The city contends that the developer must comply with both its subdivision-control ordinance and its PUD ordinance. Were this PUD subdivided into lots, the city's subdivision ordinance

would concededly require city approval. The dispute arises because subdivision of the tract into parcels is allegedly not now contemplated, although the possibility of such action in the future seems apparent from the wording of the developer's affidavit.

The issue of whether the city or the county, or both, may regulate such a unitary development is one of first impression in this court. All parties are agreed that in pure zoning matters the county's zoning ordinance preempts the city's comprehensive plan and zoning provisions within the 1½-mile zone. (*City of Canton v. County of Fulton* (1973), 11 Ill. App. 3d 171.) The parties also agree that in pure subdivision-regulation matters the city's subdivision-control ordinance preempts any county ordinances within the 1½-mile zone. (*Krughoff v. City of Naperville* (1977), 68 Ill. 2d 352; *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233.) The demarcation of authority in the case of a PUD is not so clear, however, because a PUD involves both zoning and subdivision regulations in providing unitary development of sizeable tracts of land. "The technique of planned unit development is the development of land as a unit where it is desirable to apply regulations more flexible than those pertaining to other zoning classifications and to grant diversification in the location of structures and other site qualities." *Millbrae Association for Residential Survival v. City of Millbrae* (1968), 262 Cal. App. 2d 222, 242, 69 Cal. Rptr. 251, 266.

Because the Illinois Municipal Code does not define the term "subdivision," we must look to the purposes of the enabling act (Ill. Rev. Stat. 1975, ch. 24, par. 11—12—5) to determine whether the power there granted municipalities to regulate streets, sidewalks, drainage, sewage, etc., within the 1½-mile zone extends to a development like the one involved here. As this court said in *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 245:

"In ascertaining legislative intent, the courts should consider the reason or necessity for the enactment and the meaning of the words, enlarged or restricted, according to their real intent."

The court in *Petterson* commented on the purpose of the enabling act as follows:

"We believe that the power to prescribe reasonable requirements for public streets in the interest of the health and safety of the inhabitants of the city and contiguous territory includes more than a mere designation of the location and width of streets as plaintiffs seem to contend. The legislature undoubtedly had in mind the complex problems connected with the development of territory contiguous to cities as bearing on the health and safety of all inhabitants within and without the municipality; that in such territory, in the interest of uniformity, continuity, and of public health and safety, the streets should be constructed in such a way as to afford reasonably safe passage to the traveling public and provide reasonable drainage in the interests of health. *** Considering the expressed object and purpose of the legislation, it is our conclusion that the provisions of the ordinance requiring curbs and gutters and proper drainage are within the powers conferred by the statute." (9 Ill. 2d 233, 245-46.)

The statute clearly recognizes that a municipality has a legitimate interest in regulating the development of land near its borders to protect the health and safety of its people. There can be no doubt, of course, that the presence of a sizeable PUD on a city's borders will have substantial impact on the city. This impact is not necessarily eliminated or even diminished simply because the PUD is not divided into separate parcels. In our

judgment the touchstone of a city's power to impose subdivision controls is not the division of a tract into two or more parcels but its developmental impact upon existing facilities protecting the health and safety of the municipal residents. We conclude therefore that the present development is a subdivision within the statutory meaning.

Defendants contend the city's PUD ordinance has no effect beyond the city boundaries because it is essentially a zoning ordinance, and zoning in the 1½-mile region is admittedly preempted by the county. Actually the PUD ordinance (City of Urbana Ordinances, art. XXIV) is a part of the Urbana zoning ordinance, and we agree with defendants that its provisions must yield to those of the county's ordinance. (*City of Canton v. County of Fulton* (1973), 11 Ill. App. 3d 171.) Nor do we believe that the fact that the PUD ordinance in section 34.100B4 provides that street construction shall conform to chapter 30 of the Urbana City Code (the subdivision ordinance) or that section 34.98 entitled "Qualification and General Review Criteria" in paragraph B5 contains a catch-all provision "That all other Articles of the Zoning Ordinance, other than those exceptions made in this Article, be met" serves to incorporate therein the provisions of the subdivision ordinance so as to eliminate the definitional barrier to the city's position which exists in that ordinance.

Section 30.2 of the subdivision ordinance (Urbana City Ordinances, ch. 30, sec. 30.2) provides:

> "For the purposes of this chapter, the word 'subdivision' shall mean the dividing of a tract of land into two or more lots, parcels, or tracts for the purpose, either immediate or future, of sale or building development, including a re-subdivision for any such purpose." (Urbana City Ordinance, ch. 30, sec. 30.2.)

We are not convinced that the city lacks power to extend subdivision controls to the present development, but we simply cannot construe an ordinance which by its terms

applies only to land which is divided "into two or more lots, parcels or tracts" as embracing an undivided 50-acre tract.

We hold therefore that the developer is not required to comply with the standards of the city's subdivision ordinance. Should the developer at any future time divide the tract into lots, he would, of course, be required to seek the city's approval notwithstanding the county's prior approval of his PUD plans.

Accordingly the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*