BUFFALO, DAWSON, MECHANICSBURG SEWER COMMISSION, Plaintiff-Appellant, v. DOROTHY M. BOGGS et al., Defendants-Appellees (Laura Marie Davis et al., Defendants).

Fourth District   No. 4—84—0156

Opinion filed November 7, 1984.—Rehearing denied December 5, 1984.

Bruce E. Beeman, of Scott, Beeman & Scott, P.C., of Springfield, for appellant.

John L. Swartz, of Giffin, Winning, Lindner, Newkirk, Cohen & Bodewes, P.C., of Springfield, for appellees.

JUSTICE GREEN delivered the opinion of the court:

The principal question in this case is whether a sewer commission, formed by ordinances of three villages in the manner described in division 136 of article 11 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 11—136—1 *et seq.*), has the power to enact an ordinance requiring property owners within each municipality to attach all sewage disposal systems to the drains of the commission. The parties agree that the commission could have acquired power to do so only by (1) grant from each of the villages pursuant to section 10(a) of article VII of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, sec. 10(a)), or (2) the power conferred upon sewer commissions by division 136 of article 11 of the Code. We hold that (1) such power was conferred by division 136, and (2) the ordinance was valid.

This case began August 11, 1983, when plaintiff, Buffalo, Dawson, Mechanicsburg Sewer Commission (Commission) filed a 42-count complaint in the circuit court of Sangamon County against various defendant property owners in the village of Dawson. It alleged (1) the formation of the Commission in 1971 to construct and operate a joint sewer system for the villages of Buffalo, Dawson, and Mechanicsburg, (2) the purported enactment by the Commission of an ordinance requiring all property owners in the district to connect all sewage disposal systems to those of the commission, and (3) the refusal of the defendant property owners to do so. The complaint

sought fines to punish the defendants and mandatory injunctions to require them to connect.

Certain of the defendants filed a motion to dismiss contending, among other reasons, that the Commission had no power to require the connections to its system. On February 9, 1984, the circuit court allowed the motion, dismissed the challenged counts, and entered a finding, pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)), making the order appealable. Plaintiff then appealed, contending that the trial court had improperly dismissed the counts, finding the ordinance requiring connection was void. We agree with plaintiff and reverse and remand for further proceedings.

The record before the trial court when ruling on the motion to dismiss showed that the Commission was formed by separate ordinances, all in the same form, enacted by the villages of Buffalo, Dawson, and Mechanicsburg on March 11, 1971. By ordinances, the villages authorized the creation of the Commission and elected "to operate jointly a common sewer for disposal of waste, water, and sewage" pursuant to "chapter 24, section 11—135—1 [*sic*] *et seq.,* Ill. Rev. Stat. (Ill. Bar Ed.) 1969." Division 135 of article 11 of the Illinois Municipal Code, to which reference was there made, concerns the joint operation of water supplies and waterworks. Division 136 thereof concerns "Joint Acquisition and Operation of Water and Sewage Systems" and provides for the formation of a commission such as that here. The parties do not dispute that the latter reference was the one intended and have proceeded upon that basis.

Section 8 of article VII of the Illinois Constitution of 1970 provides in part that "[t]ownships, school districts, special districts and units, designated by law as units of local government, which exercise limited governmental powers or powers in respect to limited governmental subjects *shall have only powers granted by law.*" (Emphasis added.) (Ill. Const. 1970, art. VII, sec. 8.) The parties agree that commissions organized under division 136 of article 11 of the Code come within the purview of section 8 above. This constitutional provision continues in force for the described entities a doctrine known as "Dillon's Rule," which previously applied to all subdivisions of State government. The substance of that rule is that such entities have no inherent powers, but only those powers either expressly granted by the legislature or necessarily incident thereto. *Chicago Real Estate Board v. City of Chicago* (1967), 36 Ill. 2d 530, 224 N.E.2d 793.

Section 10(a) of article VII of the Illinois Constitution of 1970 created an exception to "Dillon's Rule" which is applicable to com-

missions formed under division 136. Section 10(a) states in part:

> "Units of local government and school districts may contract or otherwise associate among themselves, with the State, with other states and their units of local government and school districts, and with the United States to obtain or share services and to exercise, combine, or *transfer any power or function,* in any manner not prohibited by law." (Emphasis added.) (Ill. Const. 1970, art. VII, sec. 10(a).)

Thus, a commission organized under division 136 can have not only the powers set forth by the legislature, but also any power of the municipalities which formed the district if those powers were transferred to it by the joint action of the municipalities. See *Village of Sherman v. Village of Williamsville* (1982), 106 Ill. App. 3d 174, 435 N.E.2d 548.

Although the meaning of section 1—1—5 of the Illinois Municipal Code is somewhat uncertain, it appears to provide some support for the existence of power in the Commission to exercise some of the powers possessed by the villages. Section 1—1—5 has, at all times relevant here, stated:

> "The corporate authorities of each municipality *may exercise jointly,* with one or more other municipal corporations or governmental subdivisions or districts, *all of the powers set forth in this Code* unless expressly provided otherwise. In this section 'municipal corporations or governmental subdivisions or districts' includes, but is not limited to, municipalities, townships, counties, school districts, park districts, sanitary districts, and fire protection districts." (Emphasis added.) Ill. Rev. Stat. 1969, ch. 24, par. 1—1—5.

The Commission contends that the foregoing constitutional and statutory provisions were conduits by which it acquired authority to enact the ordinance requiring connection. The defendants agree that the villages themselves had power to require those within their respective boundaries to connect. (*City of Nokomis v. Sullivan* (1958), 14 Ill. 2d 417, 153 N.E.2d 48; *Village of Riverwoods v. Untermyer* (1977), 54 Ill. App. 3d 816, 369 N.E.2d 1385.) The record indicates that Buffalo and Mechanicsburg had enacted such ordinances, but Dawson had not done so. However, the difficulty with the Commission's position is that one can find no indication that any of the villages ever took any action (1) to transfer its power to order connection to the Commission, or (2) to act jointly to require connection.

The villages' ordinances of March 11, 1971, authorized the creation of the Commission pursuant to the provisions of the Municipal

Code, but said nothing about the transfer of any specific power. Thus, the only powers which could be conferred on the Commission by those enactments were the statutory powers set forth in division 136. Subsequently, each village passed an ordinance authorizing the Commission to use village-owned property, including its streets and rights of way, "as necessary to construct, operate and maintain" the system. Both of the above ordinances were enacted before July 1, 1971, the stated generally effective date for the Illinois Constitution of 1970. No other ordinances that might have transferred powers to the Commission or indicated an intention of the village to act jointly to require connection have been called to our attention. Accordingly, we agree with the defendants and the trial court that neither the constitutional nor the statutory matter cited supports the contention of the Commission.

▪ Our conclusion that the Commission did have the authority to require the landowners to make connection is based upon the theory that the power to do so is necessarily incident to the powers expressly conferred by division 136 of article 11 of the Code. The Commission "has full and complete supervision, management, and control" of the sewer systems and "their maintenance, operation, and extension" and has power to purchase the sewers of the villages. (Ill. Rev. Stat. 1969, ch. 24, par. 11—136—3.) It is also authorized to incur indebtedness by issuing revenue bonds for acquiring or improving the sewer system. These bonds are not to be an obligation of the constituent municipalities. (Ill. Rev. Stat. 1969, ch. 24, par. 11—136—4.) Most importantly, when a commission created under division 136 is for the purpose of furnishing sewer services, the power to fix rates rests exclusively with the Commission. Ill. Rev. Stat. 1969, ch. 24, par. 11—136—5.

Determination as to which powers are necessarily incident to the powers expressly granted to a governmental unit is difficult. In *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 173 N.E.2d 485, a county's authority to construct a sewage treatment plant was implied from a general legislative grant to counties to regulate the disposal of sewage and to construct sewers. In *Strub v. Village of Deerfield* (1960), 19 Ill. 2d 401, 167 N.E.2d 178, legislative authorization to cities to make regulations concerning health and the suppression of disease, together with the grant of police power, was held to be sufficient to authorize a village to limit the number of scavengers licensed to collect and remove garbage within the limits of the municipality. In *Rauland Division, Zenith Radio Corp. v. Metropolitan Sanitary District* (1971), 2 Ill. App. 3d 35,

275 N.E.2d 756, the court found a sanitary district had the power to hold administrative hearings and to issue cease and desist orders concerning discharge of pollutants into the sewers of the district. The court stated this power was incident to the district's statutory power to (1) hold similar proceedings concerning discharge of pollutants into the waterways of the district, and (2) construct and maintain outlets for drainage and sewage, so as to treat sewage in such a manner that the effluent is not injurious to the public.

In *City of Nokomis* and *Village of Riverwoods*, the court's determination that municipalities had the implied power to require property owners to connect their sewage disposal systems to public sewers was based primarily upon the theory that this power was necessarily incident to legislative grants to municipalities to protect the public health and to abate nuisances. The direct focus was on the health hazards that would result from citizens using other methods to dispose of sewage. No such broad legislative grant of powers have been given to division 136 sewer commissions. However, in *Village of Riverwoods*, the court noted that if property owners were permitted to refrain from connecting to the municipal sewer, serious problems would arise, not only in terms of health but also as to "the municipal financing of" a sewer system. *Village of Riverwoods v. Untermyer* (1977), 54 Ill. App. 3d 816, 821, 369 N.E.2d 1385, 1389.

Section 10(c) of article VII of the Illinois Constitution of 1970 states that "[t]he State shall encourage intergovernmental cooperation and use its technical and *financial* resources to assist in intergovernmental activities." (Emphasis added.) (Ill. Const. 1970, art. VII, sec. 10(c).) A division 136 sewer commission is a creature of intergovernmental cooperation. Such a commission has a stated mandate to maintain and operate a viable sewer system. Such a commission is entrusted with the responsibility for borrowing money to construct, acquire, and operate the sewer facilities and to devise a schedule of paying for the facilities and their operation through setting and collecting fees. Each municipality enters into the cooperative venture dependent upon the participation of each of the other municipalities. (See *People ex rel. Morgan v. Village of Berkeley* (1951), 409 Ill. 160, 98 N.E.2d 743.) While a constituent municipality can require its own landowners to attach to the drains of the commission, that municipality cannot require landowners in other municipalities to do so. As indicated in *Village of Riverwoods*, an ability of the landowners in one constituent municipality to refuse to connect would create a serious problem as to the financing of the sewer

system.

Because of the statutory responsibility placed upon division 136 sewer commissions to handle the financing of a sewer system, we hold that the power to require landowners within the member municipalities to attach to the commission's system is a power necessarily incident to the powers specified in division 136. Such power is also related, to some degree, with the general power to operate the system. We consider our interpretation of the statutory provision to be consistent with the constitutional objective of encouraging intergovernmental cooperation to fully utilize the combined financial resources made available by such cooperation. We recognize that the question of whether the power of these commissions extends as far as we have held is a close one. However, we must reject defendants' contention that such power is not so expansive and hold that the trial court was in error in concluding that the ordinance in question was beyond the statutory power of the Commission.

Defendants assert two other points in support of their contention that the ordinance requiring connection is void.

Section 8 of article VII of the Illinois Constitution of 1970 states that "the General Assembly should provide by law for the selection of officers" of entities such as the Commission, but that the officers shall not be appointed by any person in the judicial branch. After the enactment of the present Illinois Constitution, the legislature failed to amend section 11—136—2 of the Code (Ill. Rev. Stat. 1969, ch. 24, par. 11—136—2), which provided that, upon formation of the commission, each municipality shall appoint one commissioner and a majority of the circuit judges in the circuit where the largest of the constituent localities is located shall select an additional commissioner. At the time the ordinance requiring connection was enacted, each municipality was represented on the commission by one commissioner, and a commissioner purportedly selected by the court was also serving. The ordinance passed by a 4-0 vote.

■ Defendants maintain that section 11—136—2 would not have been enacted by the legislature absent the provision for judicial appointment of one of the commissioners. They point to the fact that in article 11 of the Illinois Municipal Code, provisions for similar commissions provide that one commissioner be appointed by some person or group outside the governments of the municipalities involved. (Ill. Rev. Stat. 1983, ch. 24, par. 11—135—2.) We agree that the legislature apparently deemed the existence of a commissioner whose appointment did not come from one of the municipalities to be desirable, but we cannot agree that division 136 would not have

been passed without the provision for the additional method of appointment for one commissioner. That aspect of the legislative scheme is too minor to be given such importance. The appointment of the additional commissioner is not necessary, as the desired function of the commission can be performed without the additional commissioner. Under these circumstances, the unconstitutional portion can be severed without invalidating the entire division. *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19.

The vote on the ordinance requiring the connection was four to zero, and it would have carried regardless of the vote of the improperly appointed commissioner. The validity of the ordinance is not negated by the invalidity of the unconstitutional appointment of the commissioner.

■ Defendants also maintain that the penalty provisions of the ordinance requiring connection are invalid, because they provide that each day's failure to conform is a separate offense and fix the amount of the fine in a mandatory amount of $200. They maintain that the flat fine violates "the inherent and constitutional power of the court to proportion penalties to the seriousness of the offense" and the requirement of section 11 of article I of the Illinois Constitution of 1970 that the restoration of an offender to useful citizenship be considered in determining penalties. No authority is cited in support of the contention, inherent in the argument, that provisions (1) for flat penalties, or (2) permitting each day's failure to conform to the ordinance to constitute a separate offense create a constitutional violation *per se*. We do not agree with that argument. We do not now pass upon the validity of particular sanctions that may be applied pursuant to those penal provisions, but we do not find those provisions to invalidate the ordinance.

For the reasons stated, the judgment dismissing the various counts of the complaint is reversed, and the case is remanded to the circuit court of Sangamon County for further proceedings.

Reversed and remanded.

MILLS, P.J., and WEBBER, J., concur.