(No. 61306.—

BUFFALO, DAWSON, MECHANICSBURG SEWER COMMISSION, Appellee, v. DOROTHY M. BOGGS *et al.*, Appellants.

*Opinion filed November 21, 1985.—Rehearing denied February 4, 1986.*

John L. Swartz, of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., of Springfield, for appellants.

Bruce A. Beeman, of Scott, Beeman & Scott, P.C., of Springfield, for appellee.

JUSTICE SIMON delivered the opinion of the court:

Plaintiff, Buffalo, Dawson, Mechanicsburg Sewer Commission (the Commission), commenced an action in the circuit court of Sangamon County seeking to impose fines and a mandatory injunction against defendants, owners of improved property in the village of Dawson. The circuit court allowed defendants' motion to dismiss. The Commission appealed, and the appellate court reversed the order dismissing the Commission's complaint (128 Ill. App. 3d 688). Defendants' petition for leave to appeal was allowed by this court pursuant to our Rule 315 (94 Ill. 2d R. 315).

At issue before this court is the authority of the Commission to provide by ordinance that all improved properties in the villages making up the Commission's jurisdiction be connected to its sewer system. Defendants contend that the Commission is without authority to so order. They argue that such authority rests in the police powers enjoyed by Dawson (*City of Nokomis v. Sullivan* (1958), 14 Ill. 2d 417), and that their village has not seen fit to delegate that power to the Commission.

The villages of Buffalo, Dawson and Mechanicsburg each passed identical ordinances on March 11, 1971, au-

thorizing the formation of the Commission for the construction of a common sewer pursuant to article 11, division 136, of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 11—136—1 *et seq.*). On April 14 of that year the Buffalo, Dawson, Mechanicsburg Sewer Commission was established. Thereafter, on February 4, 1977, the Commission passed a bond ordinance to finance the construction of its sewer system as provided by statute. (Ill. Rev. Stat. 1977, ch. 24, par. 11—136—4.) Of the contemplated acquisition cost of $3,225,650, the Commission's revenue bonds accounted for $915,000. Although provision was made in the bond ordinance for regular payment of interest and retirement of principal, the interest arrearages on November 1, 1981, were $47,601.51.

In an apparent effort to combat those arrearages, the villages of Buffalo and Mechanicsburg enacted mandatory sewer connection ordinances in late 1981, but by May of 1982 the Commission's interest arrearages exceeded $70,000 and there was matured but unpaid principal of $20,000. The Commission then passed the ordinance here at issue. That ordinance, dated November 10, 1982, required the residents or property owners in the three villages to connect to the sewer system prior to June 16, 1983, and it empowered the Commission to seek injunctive relief as well as penalties for failure to make the mandatory connection.

A single question is presented in this case: whether the Commission was vested with authority to enact its ordinance of November 10, 1982. That question can be answered by determining whether the mandatory-connection ordinance is a necessary adjunct to the Commission's statutory obligations, one which is indispensable to obtaining the intended benefits of its delegated authority. If so, the power is implied and the ordinance at issue is lawful. *People ex rel. County of Du Page v. Smith* (1961),

21 Ill. 2d 572; *Strub v. Village of Deerfield* (1960), 19 Ill. 2d 401; *Merrill v. City of Wheaton* (1942), 379 Ill. 504.

Division 136 charges the Commission with the duty of establishing rates "sufficient at all times to pay the cost of operation and maintenance, [and] to provide an adequate depreciation fund." (Ill. Rev. Stat. 1983, ch. 24, par. 11—136—5.) Where, as here, the Commission has issued revenue bonds, the same section of the statute obliges the Commission to assess charges sufficient to pay the interest and principal on those bonds. Furthermore, we note that the Buffalo, Dawson and Mechanicsburg ordinances of March 11, 1971, recite the desires of those municipalities to form a sewer commission "for the purpose of planning[,] *financing* and otherwise securing and constructing a common sewer system for said municipalities." (Emphasis added.) Thus, by both statute and ordinance the Commission is instructed to finance the system and levy rates sufficient to cover operation and depreciation costs and to make scheduled interest and principal payments. Because the objective of the statute is accomplished only if the Commission actually collects the established rates, we find authority to mandate sewer connections to be an indispensable component of the Commission's authority and necessarily implied by the statute.

Defendants argue that the Commission has power to set a rate structure sufficient to meet its obligations, and that therefore the power to enact this ordinance is not a necessary implication. While division 136 does provide that rates do not "have to be identical in the several municipalities constituting the Commission" (Ill. Rev. Stat. 1983, ch. 24, par. 11—136—5), we fail to see how that power solves the Commission's cash-flow crisis. The sewer system is designed to capitalize on economies of scale and provide a level of sanitation at less cost than equally effective alternatives. That system is now in

place and its maintenance, depreciation and borrowing costs are relatively constant despite the number of users. Since costs do not decline proportionately with the number of subscribers, the fewer users the system has the greater its rates must become. At some level, rates charged by the Commission will exceed the cost to individuals of using alternate systems, and more users will disconnect. The crisis is exacerbated as fewer and fewer properties remain connected, and the system will eventually collapse. Therefore, an adjusted rate schedule is no solution to the Commission's crisis.

The Commission also contends, and we agree, that it is without authority to set rates which do not equitably reflect "the expenses of operation in each municipality." (Ill. Rev. Stat. 1983, ch. 24, par. 11—136—5.) The Commission cannot, therefore, exact charges from users in Buffalo and Mechanicsburg to cover the cost of Dawson's sewage facilities. The only way for the Commission to recover those costs is to require connection in the village of Dawson.

Defendants responded in oral argument that the system's current users are subject to the Commission's proprietary powers and can be barred from disconnecting. The distinction urged by defendants that the Commission has greater police powers in regard to sewage over some, but not all, residents within the Commission's jurisdiction is not logical. The three villages—and their residents—elected to acquire a joint sewer system, and each village has an equally substantial say in decisions of the Commission. (Ill. Rev. Stat. 1983, ch. 24, par. 11—136—1.) That one person has used the system while a second has not in no way makes the former more responsible for the Commission's failings; in fact, it is the second person's refusal to connect which precipitates a financial crisis. These municipalities and their residents must assume responsibility for their decisions and those

of their elected officials. As this court observed in *People ex rel. Morgan v. Village of Berkeley* (1951), 409 Ill. 160, 166-67:

> "It is apparent that the commission cannot carry on its functions as intended by the villages without the support of revenue from both and that to permit the village of Berkeley to withdraw from the joint undertaking would impose a burden upon the village of Hillside not contemplated when the water commission was created. *** To permit one to withdraw effectually destroys the purpose of the statute and invades the right of the other to have the common source of water to which it is entitled."

We are urged by defendants to distinguish *Berkeley* on the basis that in this case the village of Dawson has not attempted to withdraw from the venture. This is a meaningless distinction. Both cases involve a joint municipal venture in which prospective users of the system, previously enthusiastic, have attempted to avoid the costs of unfulfilled expectations. The defendants' decision to live in Dawson and enjoy its benefits obligates them to bear its burdens as well.

Defendants dispute the necessity of this ordinance because the Commission came into existence 11 years prior to adoption of the mandatory connection ordinance, and even if it is now necessary, defendants argue that a later necessity cannot alter the substance of an earlier delegation. But delegated powers are not muscles that must be exercised or lost. In any event, our objective is to "give effect to legislative intent" with due regard for contemporaneous circumstances. *Petterson v. City of Naperville* (1956), 9 Ill. 2d 233, 244-45.

In view of this conclusion, it is unnecessary to address either the argument advanced by defendants that the application of Dillon's Rule of municipal law (see J. Dillon, Municipal Corporations sec. 237 (5th ed. 1911)) to this case precludes the Commission from adopting the

ordinance in question, or the Commission's argument that authority to enact this ordinance was explicitly or implicitly delegated to the Commission by section 1—1—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 1—1—5) or by article VII, section 10(a), of the 1970 Illinois Constitution.

For the aforementioned reasons, we find the mandatory-connection ordinance to be a valid exercise of the Commission's implied statutory authority.

*Judgment affirmed.*