2020 IL App (3d) 160758

Opinion filed December 24, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-16-0758 Circuit No. 04-CF-232 |
| ANDREW GRANT, | ) ) ) | Honorable Albert L. Purham Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1     Defendant, Andrew Grant, appeals following the Peoria County circuit court's denial of

his motion for new trial. He contends that the State's illegal posttrial destruction of forensic

evidence in his case entitles him to a new trial under statutory and constitutional law. We reverse

the ruling of the circuit court, vacate defendant's conviction, and remand for further proceedings.

¶ 2                                I. BACKGROUND

¶ 3     The State charged defendant via indictment with aggravated criminal sexual assault (720

ILCS 5/12-14(a)(6) (West 2004)) and criminal sexual assault (*id.* § 12-13(a)(1)). The indictment

alleged that defendant knowingly committed an act of sexual penetration upon Z.G. by force or threat of force, knowing Z.G. to be a physically handicapped person.

¶ 4       This court has previously set forth the facts of defendant's trial in great detail. See *People v. Grant*, 2016 IL App (3d) 140211, ¶¶ 4-9. The evidence showed that Z.G., who had cerebral palsy and was legally blind, lived in a house with her parents, a sister, her brother Jeremy, and the defendant, her uncle. Z.G. testified that, one night, defendant entered her room and sexually assaulted her. He stopped and left the room when Jeremy came in. Jeremy testified that when he entered the room defendant was pulling up his pants and Z.G. was in her bed without clothes on. Jeremy testified that defendant told him not to tell anyone what he had seen. Defendant testified that Z.G. told him that she had had sex with Jeremy. When defendant confronted Jeremy, Jeremy woke up the other household members and accused defendant of assaulting Z.G.

¶ 5       Nurse Cathy Jackson Bruce performed an examination on Z.G., collecting a number of oral, rectal, and anal swabs. The parties stipulated that no semen was identified on the swabs. Jackson Bruce also collected a single hair in the course of the examination and took scrapings from underneath Z.G.'s fingernails. Neither the hair nor the scrapings were tested for DNA.

¶ 6       The jury found defendant guilty on both counts. The court merged the counts and sentenced defendant to a term of 14 years' imprisonment for aggravated criminal sexual assault. Defendant continued to maintain his innocence through a series of appeals and postconviction filings, though he failed to obtain any substantial relief.

¶ 7       In 2013, the Illinois Innocence Project filed on defendant's behalf a motion for forensic testing on the hair and fingernail scrapings. It later amended the motion to remove the request for testing on the scrapings. The circuit court denied the motion.

¶ 8　　　　This court reversed the circuit court's ruling, determining that defendant had fulfilled the obligations of section 116-3 of the Code of Criminal Procedure of 1963 (Code), which governs postconviction motions for forensic testing (725 ILCS 5/116-3 (West 2012)). *Grant*, 2016 IL App (3d) 140211, ¶¶ 14-28. Specifically, we found that "[t]he testing sought by defendant *** has the potential to be materially relevant to a claim of actual innocence." *Id.* ¶ 26. We reasoned that, if the hair were found not to match defendant or Z.G., that fact, absent any other physical evidence directly tying defendant to the offense, would be highly probative. We also pointed out that if the hair were found to match Jeremy, defendant's credibility would be significantly bolstered while Jeremy's credibility would be undermined. *Id.* We also rejected the State's argument that the strength of the evidence against defendant would render DNA test results on the hair immaterial: "Although the State is correct that a nonmatch would not completely exonerate defendant of the sexual assault, it is arguable that such a result could advance defendant's claim that he is innocent of the crime." *Id.* ¶ 27.

¶ 9　　　　On remand, counsel was appointed for defendant, and the court held a hearing relating to the motion for forensic testing. At that hearing, it was revealed that all of the forensic evidence in defendant's case had been destroyed in 2007 pursuant to Peoria Police Department policy. Defense counsel moved for a new trial or a judgment notwithstanding the verdict, on the grounds that law enforcement had failed in its duty to preserve evidence. The circuit court denied the motion, finding that the order for forensic testing could not be complied with. The court further stated: "I don't find that it was willful or there was a bad intent on the Sheriff Department [*sic*]." Defendant appealed.

¶ 10　　　　The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on this appeal. OSAD initially filled a motion under *Pennsylvania v. Finley*, 481 U.S.

3

551 (1987), seeking to withdraw on the grounds that this appeal presented no issues of merit. We granted that motion in an opinion, with one justice dissenting. OSAD subsequently moved to vacate that opinion and to be reinstated as appellate counsel for defendant. We granted that motion.

¶ 11                                II. ANALYSIS

¶ 12        Where a defendant is convicted of aggravated criminal sexual assault, section 116-4(a) of the Code mandates that a law enforcement agency securely retain any forensic evidence in the case. 725 ILCS 5/116-4(a) (West 2006). Section 116-4(b) dictates that the forensic evidence must be retained until the defendant has completed his sentence, including the period of mandatory supervised release (MSR). *Id.* § 116-4(b). The State concedes that the 2007 destruction of all forensic evidence in this case was in violation of section 116-4 of the Code. The present controversy concerns only a potential remedy for that violation.

¶ 13                                A. Mootness

¶ 14        The State first argues that this appeal is moot and should be dismissed because "there is no rational remedy that defendant could possibly be afforded," because defendant has been discharged from the Illinois Department of Corrections and has completed his term of MSR.

¶ 15        However, defendant's completion of his sentence has no bearing on his ability to obtain relief. When a defendant who has completed his sentence challenges only that sentence, the claim will be moot. *E.g.*, *In re Shelby R.*, 2012 IL App (4th) 110191, ¶ 16. Here, defendant challenges his conviction, in which he has an ongoing interest, given the "obvious advantages in purging oneself of the stigma and disabilities which attend a criminal conviction." *People v. Davis*, 39 Ill. 2d 325, 329 (1968). As our supreme court has explained: "the completion of a defendant's sentence renders a challenge to the sentence moot, but not a challenge to the

4

conviction. [Citation.] Nullification of a conviction may hold important consequences for a defendant." *In re Christopher K.*, 217 Ill. 2d 348, 359 (2005).

¶ 16                    B. Mandatory or Directory Construction

¶ 17        Section 116-4(b) says that a law enforcement agency must retain any forensic evidence in a case until defendant has completed his sentence and any term of MSR. 725 ILCS 5/116-4(b) (West 2006). It is silent as to the result of the government's failure to comply with that mandate. See *id.* However, section 33-5 of the Criminal Code of 1961 (Criminal Code), imposes a felony criminal offense for the intentional failure to comply with section 116-4. 720 ILCS 5/33-5(a), (b) (West 2006); 730 ILCS 5/5-8-1(a)(7) (West 2006).

¶ 18                    1. Mandatory or Directory Language

¶ 19        As a threshold matter, we must consider whether the criminal consequences contemplated in section 33-5 render the provisions of section 116-4 mandatory, rather than directory. It is well settled that whether a statutory provision is mandatory or directory "concerns the consequences of a failure to fulfill an obligation." *People v. Robinson*, 217 Ill. 2d 43, 52 (2005). More specifically, our supreme court has frequently declared that "the mandatory/directory question ' "simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." ' " *In re M.I.*, 2013 IL 113776, ¶ 16 (quoting *Robinson*, 217 Ill. 2d at 51-52, quoting *Morris v. County of Marin*, 559 P.2d 606, 610-11 (Cal. 1977)); see also *People v. Delvillar*, 235 Ill. 2d 507, 516-17 (2009).

¶ 20        The language employed in *M.I.*, *Robinson*, *Delvillar*, and myriad other cases makes clear that the question of a mandatory-directory analysis is whether the legislature intended the specific consequence of invalidating the governmental action at issue. The question is not

5

whether *any* consequence exists. Here, while section 33-5 plainly prescribes a consequence for failure to comply with section 116-4, that consequence under section 33-5 does nothing to invalidate any governmental action. Indeed, the consequence is wholly ancillary; it has no direct impact on any individual defendant or upon any proceedings.

¶ 21                    2. Intended Consequences for Violation

¶ 22    Although section 33-5 itself does not make section 116-4 mandatory, we must still decide whether the legislature nevertheless intended section 116-4 to be mandatory in nature. "[W]hether a particular statutory provision is mandatory or directory depends upon the intent of the legislature, which is ascertained by examining the nature and object of the statute and the consequences which would result from any given construction." *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). Thus, we must consider whether the legislature intended section 116-4 of the Code to have the specific consequence of negating or vitiating the governmental action to which it relates. *In re M.I.*, 2013 IL 113776, ¶ 16. To do so, we must first identify (1) exactly what the "particular procedural step" required by section 116-4 is and then (2) the "governmental action to which the procedural requirement relates." *In re James W.*, 2014 IL 114483, ¶ 35.

¶ 23    The first answer is clear. Section 116-4 imposes upon police departments a procedural rule relating to the storage and preservation of forensic evidence. 725 ILCS 5/116-4 (West 2006).

¶ 24    The question remains: what is the governmental action to which the requirement relates? In other words, what is the governmental action that may be "invalidated" if section 116-4 is construed as mandatory?

¶ 25                        3. Action Contemplated

¶ 26    The action undertaken by the government is its continued incarceration of convicted defendants. Indeed, the procedural requirement of evidence preservation is explicitly linked to

6

that action, as section 116-4(b) mandates that the evidence be safeguarded only until a defendant's sentence is completed. See *id.* § 116-4(b). Section 116-4 sets forth a procedural requirement of preserving evidence that relates to the government's continued imprisonment of convicted defendants. If that section is construed as mandatory, then noncompliance with the procedural requirement must result in invalidation of that governmental action, *i.e.*, vacatur of the underlying conviction. *Robinson*, 217 Ill. 2d at 51-52.

¶ 27    A procedural command to a government official is presumptively directory in nature. *People v. Ringland*, 2017 IL 119484, ¶ 57 (citing *Robinson*, 217 Ill. 2d at 58; *Delvillar*, 235 Ill. 2d at 517). However, the presumption is overcome "when the right the provision is designed to protect would generally be injured under a directory reading." *Delvillar*, 235 Ill. 2d at 517. This rule of construction goes back as far as the mandatory-directory dichotomy itself:

> "It has long been held that 'statutory requisitions' directed to government officials ' "designed to secure order, system and dispatch in proceedings" ' are usually directory rather than mandatory, but if they ' "are intended for the protection of the citizen, *** and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory." ' "
> *Robinson*, 217 Ill. 2d at 56 (quoting *People v. Jennings*, 3 Ill. 2d 125, 127 (1954), quoting *French v. Edwards*, 80 U.S. 506, 511 (1871)).

¶ 28    We are hard pressed to think of a statute in which the above rule is more applicable. Section 116-3 of the Code allows convicted persons to seek forensic testing on previously untested evidence in an effort to prove their own innocence. 725 ILCS 5/116-3 (West 2006).

¶ 29    First enacted in 1998, section 116-3 has the unquestionable benefit of reducing the number of wrongfully convicted persons in prison. Section 116-4, enacted two years later,

7

protects the efficacy of section 116-3 by ensuring that forensic evidence will actually be available for potential future testing. The importance of these two statutes together was recognized during the floor debate of House Bill 4593, which created section 116-4 as well as section 33-5 of the Criminal Code. See Pub. Act 91-871, §§ 5, 10 (eff. Jan. 1, 2001) (adding 720 ILCS 5/33-5, 116-4). There the bill's sponsor, Representative Calvin Giles, stated:

> "A couple of years ago, we here in the General Assembly, we passed a Post Conviction Forensic Testing Act which allowed a convicted person, under certain circumstances, to obtain DNA testing and other forensic testing on evidence from his or her trial when the technology for the testing was not available during the trial period. Since that time, in post conviction *** DNA evidence has figured in the exoneration of several wrongfully convicted defendant[s] in Illinois on death row. Also in recent years, innocent men have been released from prison when using the DNA testing that proved their innocence, and moreover, in some cases this testing also even caught the perpetrator. What this Bill is intended, [*sic*] is to ensure that the evidence *** is retained and available for post conviction testing." 91st Ill. Gen. Assem., House Proceedings, Feb. 23, 2000, at 167 (statements of Representative Giles).

¶ 30    The potential for exoneration afforded by section 116-4 vanishes when the government fails to comply. The legislature has provided convicted persons with a limited right to postconviction DNA testing. Where the State illegally destroys evidence, that right is fully and irreparably extinguished. The harm cannot be overstated. Defendants are no longer able to have forensic tests conducted and are foreclosed from ever proving their innocence.

"The destruction of evidence has a uniquely damaging effect on the administration of justice, for once evidence has been destroyed it cannot be retrieved for judicial review. And the destruction is irrevocable, with a concomitant impossibility of vindication by a wronged defendant and an accompanying subversion of the public interest in correct, not merely swift, justice." *Wilkinson v. Ellis*, 484 F. Supp. 1072, 1084 (E.D. Pa. 1980).

¶ 31      The importance of the right in question and the injury caused by its noncompliance indicate a mandatory intent on the part of the legislature. Our conclusion is supported by a principle of statutory construction, namely, "a court presumes that the General Assembly did not intend to create absurd, inconvenient, or unjust results." *Ringland*, 2017 IL 119484, ¶ 13. It is unlikely that the legislature would bestow the right to postconviction DNA testing, protect that right by mandating that forensic evidence be preserved, yet not intend for a defendant to have any recourse when the rule is ignored.

¶ 32      Although, section 33-5 of the Criminal Code provides a consequence for failure to comply with section 116-4, that consequence is no remedy for an aggrieved defendant. Moreover, section 33-5 only applies where the destruction of evidence is "intentional[ ]." 720 ILCS 5/33-5(a) (West 2006). When evidence is destroyed out of negligence or recklessness, there is no remedy at all. The permanent deprivation of a defendant's right to prove his own innocence is a deprivation of such a magnitude that the legislature must have intended a remedy. See *Marbury v. Madison*, 5 U.S. 137, 147 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress.").

¶ 33      Section 116-4 protects a person's right to pursue postconviction DNA testing. When the government fails to comply with that section by prematurely destroying evidence, it is an

9

understatement to say that the person's right "would generally be injured under a directory reading." *Delvillar*, 235 Ill. 2d at 517. We believe that the legislature intended section 116-4 to be mandatory and find that the government's failure to comply with that statute must result in vacatur of a defendant's conviction. See *Robinson*, 217 Ill. 2d at 51-52.

¶ 34                                    C. Remedy

¶ 35        The only relief available to the defendant here is the vacatur of his conviction. There is no reason to withhold that relief, given the consequences of defendant's continued status as a convicted felon. See *Davis*, 39 Ill. 2d at 329; *Christopher K*., 217 Ill. 2d at 359. The defendant was still imprisoned when he commenced proceedings under section 116-3 more than seven years ago. The sometimes slow machinery of the court system presents no reason to deny him relief.

¶ 36        We recognize that vacating defendant's conviction and remanding for a potential new trial is an imperfect remedy. The permanent nature of the State's action renders defendant unable to test the evidence in question. As a result, a potential retrial could be wholly identical to defendant's original trial, insofar as neither trial would have the results of forensic testing on the hair. A partial cure for this concern may be found in *Arizona v. Youngblood*, 488 U.S. 51 (1988). The jury in that case was given instructions concerning the State's obligation to preserve the evidence in question and its failure to do so; it was allowed to draw a negative inference therefrom. See *id.* at 54. Justice Stevens commented that such a procedure bolstered the fairness of the defendant's trial. *Id.* at 59-60 (Stevens, J., concurring). The same partial remedy has also been suggested as appropriate by the Innocence Project and others. See, *e.g.*, *Preservation of Evidence*, Innocence Project, https://www.innocenceproject.org/preservation-of-evidence/ (last visited Dec. 18, 2020) [https://perma.cc/NG6Y-DYHB]; Norman C. Bay, *Old Blood, Bad Blood,*

*and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith*, 86 Wash. U. L. Rev. 241, 293 (2008). The State does not respond to defendant's claim that such a strategy would be suitable on remand. Accordingly, in addition to vacating defendant's conviction, we order that the jury at any retrial be advised that the State has failed to preserve potentially exculpatory evidence as required and that the jury may construe that fact against the State. See *Youngblood*, 488 U.S. at 54.

¶ 37                                        III. CONCLUSION

¶ 38        In closing, we note that the impact of this decision is limited in two important ways. First, the construction of section 116-4 as mandatory does not impose any new duties or burdens upon police departments in Illinois. Those departments were already obligated under section 116-4 to preserve certain forensic evidence for certain time periods.

¶ 39        Second, a right to postconviction forensic testing is a limited right. A convicted person is not entitled to *carte blanche* testing of every piece of forensic evidence collected in his case. Section 116-3 limits postconviction forensic testing only to those cases where identity was at issue and the testing has the potential to produce new, materially relevant evidence, among other requirements. 725 ILCS 5/116-3 (West 2006). Only when all conditions are met does the right to testing apply. In defendant's case, this court had already found that he was entitled to such testing. See *Grant*, 2016 IL App (3d) 140211, ¶¶ 14-28.

¶ 40        We reverse the judgment of the circuit court of Peoria County, vacate defendant's conviction, and remand for further proceedings.

¶ 41        Reversed and vacated.

¶ 42        Cause remanded.

¶ 43        JUSTICE SCHMIDT, dissenting:

11

¶ 44 I agree with the majority that section 116-4(a) is mandatory with respect to the mandatory-directory dichotomy. I respectfully dissent from the rest of the analysis.

¶ 45 Section 33-5 of the Criminal Code of 1961 holds: "It is unlawful for a law enforcement agency or an agent acting on behalf of the law enforcement agency to intentionally fail to comply with the provisions of subsection (a) of Section 116-4 of the Code ***." 720 ILCS 5/33-5(a) (West 2006). Failure to comply with section 116-4(a) is a Class 4 felony, punishable by up to three years in prison. *Id.* § 33-5(b); 730 ILCS 5/5-8-1(a)(7) (West 2006). Thus, the legislature has explicitly prescribed an extreme consequence for a law enforcement agency's failure to preserve forensic evidence. The legislative intent is clear; section 116-4 of the Code is plainly, *definitionally*, mandatory. The legislature, when considering consequences for a failure to comply, elected not to declare that posttrial destruction of evidence should warrant a new trial or vacatur of a conviction for a defendant.

¶ 46 The State concedes that the deliberate destruction of the evidence in this case violated section 116-4. The majority acknowledges that the statutory scheme details a consequence for a failure to follow its strictures. Unsatisfied with this consequence, the majority goes on to usurp the role of the legislature and create a remedy for defendant from whole cloth. There is no common-law duty for law enforcement to retain this evidence. This responsibility is entirely a creation of statute, and as such, I would adhere to the explicit intent of the legislature. "The people of the State of Illinois expect the courts to follow and interpret the law, but not to create it. Judicial activism is the result of legislative inaction." *People v. Lang*, 62 Ill. App. 3d 688, 712 (1978), *aff'd in part, rev'd in part*, 76 Ill. 2d 311 (1979). The majority's judicial activism and promulgation of this result-oriented jurisprudence where the legislature has clearly acted is unwarranted.

12

¶ 47    Further, when deciding what governmental action to invalidate, my colleagues state that "[t]he action undertaken by the government is its continued incarceration of convicted defendants." *Supra* ¶ 26. They then go on to find noncompliance with the section results in "vacatur of the underlying conviction." *Supra* ¶ 26. Wrong.

¶ 48    Here, defendant is no longer incarcerated. Furthermore, the posttrial preservation of evidence cannot properly be considered a "procedural step." (Internal quotation marks omitted.) *Supra* ¶ 19. Once the trial is complete, there is no "governmental action" to which the preservation requirement relates. (Internal quotation marks omitted.) *Supra* ¶ 19. In short, there is no pending proceeding that can be "undone" as a consequence of the State's noncompliance. It is likely because of these difficulties of remedy that the legislature took the extraordinary step of rendering it a felony for intentionally failing to comply with section 116-4.

¶ 49    In sum, the statutory section in question is mandatory, and the legislature provides a consequence for failing to comply that applies in this situation. That should be the end of the analysis. I find the vacatur of defendant's conviction due to the destruction of potentially helpful evidence an absurd windfall.

¶ 50    Turning to the new trial on remand, in *Arizona v. Youngblood*, 488 U.S. 51 (1988), the United State Supreme Court considered the consequences flowing from the State's failure to preserve or retain forensic evidence *prior to trial*. Under *Youngblood*, the pretrial destruction of evidence that is merely potentially exculpatory is a due process violation where that destruction was done in bad faith. *Id.* at 58. Yet, the Supreme Court has never held that the same standard should apply to the postconviction destruction of evidence, as occurred in this case. In fact, the Court explicitly rejected the notion of a freestanding due process right to postconviction access to DNA evidence. *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S.

13

52, 72 (2009). The Court pointed out that, if it did find such a constitutional right, it "would soon have to decide if there is a constitutional obligation to preserve forensic evidence that might later be tested." *Id.* at 74. Instead, the *Osborne* Court concluded that questions of access to and preservation of DNA evidence after a criminal trial were best left to the legislatures. *Id.* at 73. Sections 116-3 and 116-4 of the Code are a part of that legislative response. Illinois statute mandates that police departments preserve forensic evidence in certain cases and punishes the failures to do so with criminal consequences. While the destruction of the evidence in this case was intentional, there has been no showing of bad faith. *Youngblood* and its progeny are inapplicable to the present matter, as there is no due process violation. The majority's instruction for a new trial on remand with the court giving the *Youngblood* instruction postconviction and postincarceration is error.

¶ 51        I would affirm.

14

---

**No. 3-16-0758**

---

| | |
|---|---|
| **Cite as:** | *People v. Grant*, 2020 IL App (3d) 160758 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 04-CF-232; the Hon. Albert L. Purham Jr., Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, John M. McCarthy, Amy J. Kemp, and Susan M. Wilham, of State Appellate Defender's Office, of Springfield, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---

15