**2022 IL 126824**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 126824)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
ANDREW GRANT, Appellee.

*Opinion filed April 21, 2022.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, and Michael J. Burke concurred in the judgment and opinion.

Justice Neville dissented, with opinion.

Justice Carter took no part in the decision.

## OPINION

¶ 1        In 2004, defendant, Andrew Grant, was convicted, by jury, of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(6) (West 2004)) and criminal sexual

assault (*id.* § 12-13(a)(1)). The trial court merged the counts and sentenced defendant to 14 years in prison. In 2013, defendant filed a motion for forensic testing of a hair that was discovered during a postassault examination of the victim. It was subsequently discovered that all the forensic evidence in defendant's case was destroyed in 2007, pursuant to Peoria Police Department (PPD) policy. Defense counsel moved for a new trial or for a judgment notwithstanding the verdict (judgment *n.o.v.*) on the grounds of PPD's failure to fulfill its duty to preserve the forensic evidence as required by section 116-4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-4 (West 2006)). The Peoria County circuit court denied defendant's motion for a new trial or for a judgment *n.o.v.*

¶ 2        The appellate court reversed the judgment of the circuit court, vacated defendant's conviction, remanded for further proceedings, and ordered a jury instruction at any retrial that the State failed to preserve potentially exculpatory evidence as required and that the jury may construe that fact against the State. This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). For the following reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4        On March 11, 2004, defendant was charged, by indictment, with aggravated criminal sexual assault (720 ILCS 5/12-14(a)(6) (West 2004)) and criminal sexual assault (*id.* § 12-13(a)(1)). The indictment alleged that defendant knowingly committed an act of sexual penetration upon Z.G. by the use of force or threat of force, knowing Z.G. to be a physically handicapped person.

¶ 5        A jury trial was conducted on September 28, 2004. Evidence at the trial showed that Z.G. suffered from cerebral palsy and was legally blind, although she could discern some colors and shapes. Z.G. testified that in February 2004, she resided with her parents, her sister, her brother (Jeremy), and defendant—her uncle who was residing with her family. Z.G. testified that on the night of February 27, 2004, defendant "busted in the door, puts me down on the floor [*sic*] and start raping me [*sic*]." Z.G. testified that Jeremy heard some noise, "came busting in the door," and asked defendant, "What are you doing in her room?" Z.G. testified that "the only thing I seen [*sic*], [defendant] jumped up, pulled up his pants [*sic*]."

¶ 6        Jeremy testified that on the night in question he got up because he heard some noises in the house. He discovered that defendant was not on the couch where he usually slept and that Z.G.'s bedroom door was locked. Jeremy testified that he used a knife to unlock Z.G.'s bedroom door and, when he entered the room, Z.G. was undressed and defendant was pulling up his pants. Jeremy testified that defendant said, "Don't tell." Jeremy told his dad what happened, and defendant was ejected from the house.

¶ 7        Defendant testified that Z.G. told him that she had sex with Jeremy and, when he confronted Jeremy with "trying to have sex with your own sister," Jeremy awakened the other household members and accused defendant of having sex with Z.G. Defendant testified that he was forced to leave the house.

¶ 8        Cathy Jackson Bruce testified that she is a sexual assault nurse who examined Z.G. Several swabs were collected during the examination. The parties stipulated that no semen was found on the swabs. Jackson Bruce also collected a single hair from Z.G.'s vagina and obtained scrapings from underneath Z.G.'s fingernails. The record reflects that forensic testing was conducted on neither the hair nor the fingernail scrapings.

¶ 9        The jury found defendant guilty of both counts. The circuit court merged the counts and sentenced defendant to 14 years in prison for aggravated criminal sexual assault. Defendant asserted a claim of innocence through numerous appeals and postconviction filings but failed to obtain any significant relief.

¶ 10        On June 5, 2013, pursuant to section 116-3 of the Code (725 ILCS 5/116-3 (West 2012)), the Illinois Innocence Project filed on behalf of defendant a motion for forensic testing of the hair and fingernail scrapings that were collected during the postassault examination of Z.G. At the hearing on the motion, defense counsel indicated that defendant was withdrawing the request for testing of the fingernail scrapings and wished to have testing conducted solely on the hair. The circuit court denied defendant's motion for forensic testing. The appellate court reversed and remanded, finding defendant satisfied the requirements of section 116-3. *People v. Grant*, 2016 IL App (3d) 140211, ¶¶ 14-28. The appellate court found that forensic testing had the potential to be materially relevant to defendant's claim of actual innocence, remarking that, if the hair were tested and matched Jeremy, defendant's credibility would be bolstered while Jeremy's credibility would be undermined. *Id.*

¶ 26. The appellate court indicated that, although a nonmatch would not completely exonerate defendant, it could arguably support his actual innocence claim. *Id.* ¶ 27.

¶ 11 On remand, defense counsel was appointed, and a hearing was conducted on the motion for forensic testing. At the hearing, it was discovered that all the forensic evidence in defendant's case was destroyed on February 28, 2007, pursuant to PPD policy. Defense counsel moved for a new trial or for a judgment *n.o.v.*, asserting that, pursuant to section 116-4 of the Code, PPD was required to preserve the forensic evidence until defendant completed his sentence, including any period of mandatory supervised release. Defendant argued that he was denied due process by PPD's failure to comply with section 116-4 of the Code and that PPD "inherently acted in bad faith by not following the law."

¶ 12 The State filed a motion to dismiss defendant's motion for a new trial or for a judgment *n.o.v.*, arguing that the motion was untimely, as it was filed more than 30 days after the jury's verdict, and that section 116-3 of the Code did not allow for an attack on the underlying conviction, which the State argued must be advanced in a separate collateral proceeding for postconviction relief.

¶ 13 The circuit court denied both the State's motion to dismiss and defendant's motion for a new trial or for a judgment *n.o.v.*, finding the destruction of the hair sample rendered it impossible to comply with the appellate court's order for forensic testing. Moreover, the circuit court did not find the destruction of the evidence "was willful or there was a bad intent on the Sheriff Department [*sic*]."

¶ 14 On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant. At the outset, OSAD filed a motion pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), seeking to withdraw on the grounds of the appeal presenting no meritorious issues. The appellate court granted OSAD's *Finley* motion in an opinion, with one justice dissenting. See 2020 IL App (3d) 160758, ¶ 10. Subsequently, OSAD moved to vacate the opinion and to be reinstated as counsel for defendant. The appellate court granted the motion, and the appeal proceeded. *Id.*

¶ 15 In a divided opinion, the appellate court majority observed that, although section 116-4 of the Code is silent of any consequences for the government's noncompliance with the mandate to preserve forensic evidence, section 33-5 of the

Criminal Code of 1961 (Criminal Code) prescribes a felony penalty for intentional noncompliance with section 116-4. *Id.* ¶ 17 (citing 720 ILCS 5/33-5(a), (b) (West 2006)). The majority determined, however, that the criminal consequence in section 33-5 did not, by itself, render section 116-4 mandatory. *Id.* ¶¶ 20, 22.

¶ 16    The majority proceeded to apply the mandatory-directory analysis, which determines whether the legislature intended for noncompliance with a particular procedural step to have the consequence of invalidating the governmental action to which the procedural requirement relates. *Id.* ¶ 19 (citing *In re M.I.*, 2013 IL 113776, ¶ 16, *People v. Robinson*, 217 Ill. 2d 43, 51-52 (2005), and *People v. Delvillar*, 235 Ill. 2d 507, 516-17 (2009)). The majority identified the "particular procedural step" in this case as the requirement to preserve forensic evidence set forth in section 116-4 (*id.* ¶ 23) and identified the governmental action to which the procedural requirement relates as the continued incarceration of convicted defendants (*id.* ¶ 26), reasoning that the requirement to preserve evidence "is explicitly linked to that action," as section 116-4 requires that the evidence be preserved only until a defendant's sentence is complete (*id.*). The majority stated that section 116-4 sets forth a procedural requirement of preserving forensic evidence "that relates to the government's continued imprisonment of convicted defendants" and, if 116-4 is construed as mandatory, noncompliance with that procedural requirement must result in the "invalidation of that governmental action, *i.e.*, vacatur of the underlying conviction." *Id.*

¶ 17    The majority stated that a procedural command to a government official is presumptively directory in nature, but that presumption is overcome " 'when the right the provision is designed to protect would generally be injured under a directory reading.' " *Id.* ¶ 27 (quoting *Delvillar*, 235 Ill. 2d at 517). Applied here, the majority observed that section 116-3 of the Code allows convicted persons to request forensic testing on previously untested evidence in an attempt to prove their innocence (*id.* ¶ 28) and section 116-4 ensures that forensic evidence will be available for future testing (*id.* ¶ 29). The majority emphasized, however, that the potential for exoneration provided by section 116-4 is eliminated when the government fails to comply with the requirement to preserve evidence. *Id.* ¶ 30. Accordingly, the majority concluded that section 116-4 is mandatory, based on the importance of the right to test the evidence and the injury caused by noncompliance with the requirement to preserve the evidence. *Id.* ¶ 31.

¶ 18    Having found section 116-4 mandatory, the majority observed that, although section 33-5 of the Criminal Code provides a consequence for noncompliance with section 116-4, that consequence only applies when noncompliance is intentional. *Id.* ¶ 32. The majority emphasized that, when noncompliance is negligent or reckless, there is no remedy at all. *Id.* The majority concluded that the deprivation of a defendant's right to attempt to prove his own innocence was "of such a magnitude that the legislature *must have intended a remedy*." (Emphasis added.) *Id.* Accordingly, the majority found PPD's failure to comply with the statute must result in a vacatur of defendant's conviction. *Id.* ¶ 33.

¶ 19    The majority recognized that vacating the conviction and remanding for a potential new trial was an imperfect remedy, given the inability to test the forensic evidence that was destroyed. *Id.* ¶ 36. Thus, in addition to vacating the conviction, the appellate court determined a partial cure would be to instruct the jury at any retrial that the State failed to preserve potentially exculpatory evidence as required and that the jury may construe that fact against the State. *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 54 (1988)).

¶ 20    The dissenting justice in the appellate court noted that the legislature expressly provided a remedy for a violation of section 116-4 by indicating that intentional noncompliance constitutes a Class 4 felony, punishable by up to three years in prison. *Id.* ¶ 45 (Schmidt, J., dissenting) (citing 720 ILCS 5/33-5(b) (West 2006)). The dissent emphasized that, when considering consequences for noncompliance with section 116-4, the legislature presented neither a new trial nor a vacatur of a defendant's conviction as an option. *Id.* Accordingly, the dissent asserted that, by ordering a vacatur of defendant's conviction in this case, the majority crafted a judicial remedy that the legislature did not provide. *Id.* ¶ 46.

¶ 21    The dissent further stated that the jury instruction pursuant to *Youngblood* is inapplicable here because in *Youngblood*, the United States Supreme Court considered the consequences of the State's failure to preserve forensic evidence *before trial* and concluded that the pretrial destruction of potentially exculpatory evidence violates due process where the destruction was conducted in bad faith and merited the jury instruction on that basis. *Id.* ¶ 50. The dissent noted that here the destruction of the hair did not occur before defendant's trial but after he was convicted. *Id.* Moreover, it was not established that the hair was destroyed in bad

faith. *Id.* For these reasons, the dissent concluded that a jury instruction under *Youngblood* would not be warranted at any retrial in this case. *Id.* This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 22                                    ANALYSIS

¶ 23       The issue in this case is whether the legislature intended PPD's destruction of forensic evidence after defendant's trial and conviction but before he completed his sentence—a violation of section 116-4 of the Code (725 ILCS 5/116-4 (West 2006))—to require a vacatur of defendant's conviction. The issue is one of statutory interpretation, which is a question of law we review *de novo*. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005).

¶ 24       In observing the well-established principles of statutory interpretation, this court's primary goal is to ascertain and give effect to the intent of the legislature. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16. The most reliable indicator of the legislature's intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Id.* When the language of a statute is clear and unambiguous, courts may not depart from the statute's terms (*Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24) nor construe the statute other than by its plain language (*People ex rel. Madigan v. Bertrand*, 2012 IL App (1st) 111419, ¶ 35).

¶ 25       " 'Under the guise of construction, a court may not supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of language employed in the statute.' " *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005) (quoting *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10 (2001)). Nor may a court, under the guise of construction, "correct" a perceived error or oversight by the legislature. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). Moreover, "[i]n construing the provisions of a statute[,] it is not only proper, but often necessary, to consider the provisions of other statutes relating to the same subject matter for the purpose of determining legislative intent." *Petterson v. City of Naperville*, 9 Ill. 2d 233, 243 (1956).

¶ 26 Turning to the statutes pertinent to this case, we observe that the United States Supreme Court established that postconviction access to forensic testing is not a constitutional right but a statutory right that is aptly governed by state legislatures. *District Attorney's Office for the Third Judicial District v. Osborne*, 557 U.S. 52, 72-74 (2009). To that regard, the Illinois General Assembly enacted the statutory right to postconviction forensic testing, provided in section 116-3 of the Code, which allows defendants to seek postconviction forensic testing when certain conditions are met. See 725 ILCS 5/116-3 (West 2012).

¶ 27 To promote and to protect the right to forensic testing, section 116-4(a) of the Code provides: "Before or after the trial in a prosecution for," *inter alia*, aggravated criminal sexual assault (720 ILCS 5/12-14(a)(6) (West 2004)) or criminal sexual assault (*id.* § 12-13(a)(1)), "a law enforcement agency *** shall preserve *** any physical evidence in their possession or control that is reasonably likely to contain forensic evidence, *** secured in relation to a trial." 725 ILCS 5/116-4(a) (West 2006).

¶ 28 Section 116-4(b) further provides: "After a judgment of conviction is entered, the evidence *** shall be securely retained by a law enforcement agency. *** Retention shall be until the completion of the sentence, including the period of mandatory supervised release for the offense, or January 1, 2006, whichever is later ***." *Id.* § 116-4(b).

¶ 29 Section 33-5(a) of the Criminal Code also serves to protect the right to forensic testing, as it declares it "unlawful for a law enforcement agency *** to intentionally fail to comply with the provisions of subsection (a) of Section 116-4 of the Code." 720 ILCS 5/33-5(a) (West 2006). Section 33-5(b) further provides that "[a] person who violates this Section is guilty of a Class 4 felony." *Id.* § 33-5(b).

¶ 30 Because section 116-4's requirement to preserve forensic evidence is a statutory command to law enforcement agencies, we must determine whether that statutory command is mandatory or directory. *In re M.I.*, 2013 IL 113776 ¶ 15. The mandatory-directory dichotomy determines the consequences of noncompliance with such a command. *Delvillar*, 235 Ill. 2d at 516. A statute is mandatory when "the intent of the legislature dictates a particular consequence for failure to comply with the provision." *Id.* at 514. Conversely, "[i]n the absence of such intent[,] the

statute is directory and no particular consequence flows from noncompliance." *Id.* at 515.

¶ 31    Here, the parties agree that the command in section 116-4 to preserve forensic evidence is mandatory, but they disagree on the consequences required for PPD's violation of the command. The State asserts that section 116-4 is mandatory because the intent of the legislature dictates a particular consequence for noncompliance with the provision—felony liability for intentional violations as set forth in 33-5 of the Criminal Code. See *id.* at 514. In response, defendant acknowledges that the legislature's prescription of felony penalties for intentional noncompliance with section 116-4 supports the conclusion that the legislature intended the statute to be mandatory, yet he contends that this is not the type of consequence required.

¶ 32    Defendant insists that violations of a mandatory statutory command must be remedied by a consequence that relieves the injurious effect of the violation and section 33-5 does not accomplish that. Defendant stresses that PPD's failure to comply with the mandate to preserve the hair not only injured his right to postconviction testing, but it permanently eviscerated that right, for evidence that is destroyed may never be tested by a defendant who seeks to prove his innocence. Defendant thus argues that, to relieve the injury of PPD's violation of the command to preserve the forensic evidence, he is entitled to a vacatur of his conviction and a new trial with an adverse-inference jury instruction. To substantiate this proposal, defendant contends that the government's noncompliance with a mandatory statutory command must result in "the unconditional consequence of invalidating the governmental action to which the command relates." According to defendant, the entry of a judgment of conviction "is the very event that triggers a law enforcement agency's duty to" preserve the forensic evidence as section 116-4 requires. Thus, defendant submits that his conviction is the governmental action to which the command to preserve evidence most clearly relates and is thereby subject to invalidation.

¶ 33    Defendant's position is summarized by the appellate court, which stated that "[t]he question is not whether *any* consequence exists" but "whether the legislature intended the specific consequence of invalidating the governmental action at issue." (Emphasis in original.) 2020 IL App (3d) 160758, ¶ 20 (citing *In re M.I.*, 2013 IL

113776, ¶ 16, *Robinson*, 217 Ill. 2d at 51-52, and *Delvillar*, 235 Ill. 2d at 516-17). The appellate court indicated that, although "section 33-5 plainly prescribes a consequence for failure to comply with section 116-4, that consequence *** does nothing to invalidate any governmental action." *Id.* Dissatisfied with the consequence dictated by the legislature, the appellate court asserted that "the legislature *must have intended a remedy*." (Emphasis added.) *Id.* ¶ 32. Accordingly, notwithstanding the express consequence set forth in section 33-5, the appellate court proceeded to "decide whether the legislature *** intended section 116-4 to be mandatory" by considering whether the legislature intended for violations of section 116-4 "to have the specific consequence of negating or vitiating the governmental action to which it relates." *Id.* ¶ 22.

¶ 34     Defendant requests this court to likewise determine whether an invalidation of his conviction may be inferred as a consequence of PPD's violation of section 116-4. We decline to incorporate this principle into our analysis, as we need look no further than the plain language of section 116-4 to resolve the issue. Under the mandatory or directory question, section 116-4 of the Code is mandatory, as the legislature's intent dictates a particular consequence for failure to comply with the requirement to preserve forensic evidence (*Delvillar*, 235 Ill. 2d at 514; *In re M.I.*, 2013 IL 113776, ¶ 16), namely, felony liability for intentional noncompliance (720 ILCS 5/33-5 (West 2006)).

¶ 35     The plain language of section 116-4 contains nothing to indicate that the legislature intended for the failure to comply with the statute to result in a vacatur of defendant's conviction. Indeed, the legislative intent is further confirmed by the criminal liability set forth in section 33-5 of the Criminal Code for intentional noncompliance with section 116-4. This demonstrates that the legislature considered consequences for noncompliance with section 116-4 and expressly provided the consequence it deemed appropriate and the circumstances to which the consequence applies. See *Petterson*, 9 Ill. 2d at 243 (legislative intent further determined by considering provisions of other statutes relating to the same subject matter). Had the legislature intended to impose the consequence of a vacatur of the conviction—or any other consequence—for violations of section 116-4, it would have done so.

¶ 36    We note that defendant cites *Robinson*, 217 Ill. 2d 43, *Delvillar*, 235 Ill. 2d 507, and *In re M.I.*, 2013 IL 113776, in which this court considered whether the invalidation of a governmental action should be inferred as a consequence for noncompliance with a procedural step. However, that determination was required in those cases because the legislature did not dictate a particular consequence for noncompliance, nor was the legislative intent discernible from the plain language of the statutes. Conversely, here, we need not consider whether an invalidating consequence must be inferred, as the legislature made its intent clear by expressly dictating a consequence for violations of section 116-4.

¶ 37    Defendant also cites *People v. Ramirez*, 214 Ill. 2d 176, 183 (2005), in which this court held that strict compliance with the clerk's obligation to send notice of the trial date to defendant via certified mail is a mandatory prerequisite to conducting a criminal trial *in absentia* where the defendant was not present in court when the matter was set for trial. This court reversed the defendant's conviction and remanded for a new trial because the clerk failed to comply with the mandatory statutory command. *Id.* at 187.

¶ 38    Here, defendant notes that the statutory command in *Ramirez* was directly related to the proceeding that was invalidated by the violation of that command. He concedes that the connection between section 116-4 and his trial and conviction is more remote than the connection between the notice requirement and the defendant's trial and conviction in *Ramirez*. Yet defendant asserts a connection indeed exists, as section 116-4 expressly references both the trial and the entry of a judgment of conviction. According to defendant, his conviction is the governmental action to which the command to preserve forensic evidence most clearly relates because the command is triggered once the conviction is entered. Thus, defendant concludes that his conviction is the governmental action subject to invalidation. We disagree.

¶ 39    Our holding in *Ramirez* was in the context of ensuring that the defendant's constitutional rights were afforded all the necessary statutory safeguards. *Id.* at 184. We refuse to extend that holding to the context of this case where there is neither a constitutional implication nor a direct link between the statutory command and defendant's trial and conviction.

¶ 40    Furthermore, unlike *Robinson*, 217 Ill. 2d 43, *Delvillar*, 235 Ill. 2d 507, and *In re M.I.*, 2013 IL 113776, here, section 116-4 does not involve any procedural step to which a governmental action relates. Contrary to defendant's claims, the requirement of posttrial preservation of forensic evidence is not a procedural step in the process of procuring a valid conviction. Although the testing of forensic evidence may yield results that could potentially support a claim of actual innocence, this does not suggest that there was any infirmity in the trial or the conviction. Nor does the posttrial preservation of forensic evidence affect the constitutional validity of the conviction. There is simply no relation between section 116-4 and defendant's conviction, such that a violation of section 116-4 undermines the conviction or renders it invalid. Accordingly, we reject defendant's argument that his conviction is the governmental action to which the command to preserve evidence relates and is thereby subject to invalidation.

¶ 41    We refuse to add anything to the plain language of section 116-4, as this is the province of the legislature, which clearly considered consequences for violations of section 116-4 and dictated the consequence it deemed appropriate. We find the plain language of section 116-4 establishes that the legislature did not intend to prescribe a vacatur of defendant's conviction as a consequence for violating the requirement to preserve forensic evidence and the appellate court erred in holding otherwise.

¶ 42    As a final note, we acknowledge that both parties assert positions on the application of the statutory canon of *expressio unius est exclusio alterius*. However, that canon is inapposite here, as we determined that the legislative intent is clear from the plain language of the statute. See *People v. Roberts*, 214 Ill. 2d 106, 117 (2005) (*Expressio unius est exclusio alterius* "is simply an aid of statutory construction" that "is applicable only to help ascertain the intent of the legislature when that intent is not clear from the plain language of the statute."); *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999) (courts need not delve into canons of statutory construction where the plain language is clear).

¶ 43    Having determined that the appellate court erred by ordering a vacatur of defendant's conviction, we need not consider the State's alternative issue of whether an adverse-inference jury instruction pursuant to *Youngblood* would be

- 12 -

appropriate at any retrial.

¶ 44                                CONCLUSION

¶ 45       For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 46       Appellate court judgment reversed.

¶ 47       Circuit court judgment affirmed.

¶ 48       JUSTICE NEVILLE, dissenting:

¶ 49       The majority holds that defendant, Andrew Grant, is not entitled to posttrial relief despite the fact that the Peoria Police Department disposed of evidence in his case in violation of section 116-4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/116-4 (West 2012)). I disagree. In my view, PPD's violation of its statutory duty to preserve evidence requires vacatur of defendant's conviction.

¶ 50       It is undisputed that PPD violated its obligation to preserve the evidence in defendant's case. At issue in this appeal is whether the terms of section 116-4 are mandatory and, if so, whether defendant's conviction must be vacated. Thus, the court is tasked with construing the language of section 116-4 and determining the result of PPD's admitted statutory violation.

¶ 51                    I. General Principles of Statutory Construction

¶ 52       As the majority recognizes, the question of whether a statutory command is mandatory or directory presents a question of law involving statutory construction. *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 16; *In re M.I.*, 2013 IL 113776, ¶ 15 (citing *People v. Robinson*, 217 Ill. 2d 43, 54 (2005)). Consequently, our review is *de novo*. *Lakewood Nursing & Rehabilitation Center, LLC*, 2019 IL 124019, ¶ 16.

¶ 53    When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Id.* ¶ 17. The best evidence of legislative intent is the language of the statute, which should be given its plain and ordinary meaning. *Id.* A court will not depart from the clear and unambiguous terms set forth in a statute by reading into it terms or conditions that the legislature did not include. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24; *People v. Shinaul*, 2017 IL 120162, ¶ 17. Thus, courts will not inject or annex new provisions, supply omissions, or substitute different provisions, regardless of how desirable they may be. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 154-55 (1997); see also *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005).

¶ 54                              II. Applicable Statutory Provisions

¶ 55    Section 116-4 is one of several provisions that govern the proceedings after trial on criminal charges. See 725 ILCS 5/116-1 *et seq.* (West 2012). Sections 116-1 and 116-2 set forth the procedures under which a defendant may move for a new trial or in arrest of judgment. *Id.* §§ 116-1, 116-2.

¶ 56    Section 116-3 provides that, regarding a claim of actual innocence, a defendant may move for the performance of fingerprint, ballistic, or forensic DNA testing that was not available at the time of trial. *Id.* § 116-3(a). The court shall allow the testing under reasonable conditions that are designed to protect the State's interests in the integrity of the evidence and the testing process. *Id.* § 116-3(c).

¶ 57    As a means of securing the right to seek such testing in certain types of cases, section 116-4 imposes a statutory duty that requires law enforcement agencies and their personnel to preserve any physical evidence that is reasonably likely to contain forensic evidence. *Id.* § 116-4(a). The obligation to preserve evidence exists both before and after trial. *Id.* After conviction, the evidence must be securely retained until the completion of the defendant's sentence. *Id.* § 116-4(b). Also, following conviction, a law enforcement agency may petition the court for permission to dispose of evidence that has no significant value for forensic testing or where the death of the defendant has eliminated the need for preservation. *Id.* § 116-4(c). The court may order the disposition of evidence "if the defendant is allowed the opportunity to take reasonable measures to remove or preserve portions of the

- 14 -

evidence in question for future testing." *Id.* § 116-4(d). Thus, as a whole, article 116 generally serves to protect the rights of criminal defendants to seek posttrial relief, and it specifically enables them to obtain the testing of evidence to support claims of actual innocence in certain cases. In addition, this statutory scheme protects the interests of the State in preserving evidence before and after trial and in maintaining the integrity of evidence in cases where posttrial testing has been ordered.

¶ 58                    III. Principles Governing the Mandatory-Directory Analysis

¶ 59        In general, it is presumed that statutory language issuing a procedural command to a government official is directory rather than mandatory. *Round v. Lamb*, 2017 IL 122271, ¶ 13; see also *People v. Geiler*, 2016 IL 119095, ¶ 18; *People v. Delvillar*, 235 Ill. 2d 507, 517 (2009). That presumption may be overcome in either of two circumstances: (1) when the statute includes negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured by a directory reading. *Geiler*, 2016 IL 119095, ¶ 18; *In re James W.*, 2014 IL 114483, ¶ 35; *In re M.I.*, 2013 IL 113776, ¶ 17. The second circumstance arises in situations where the statutory command is intended for the protection of a citizen and a disregard of the command will generally injure the citizen's right. *Robinson*, 217 Ill. 2d at 56.

¶ 60        Courts employ the mandatory-directory analysis to determine the consequences of a failure to fulfill a statutory obligation. *Geiler*, 2016 IL 119095, ¶ 16; *Delvillar*, 235 Ill. 2d at 516; *Robinson*, 217 Ill. 2d at 52. The mandatory-directory designation " 'simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52 (quoting *Morris v. County of Marin*, 559 P.2d 606, 611 (Cal. 1977)).

¶ 61                    IV. Section 116-4 Does Not Specify a Particular Consequence

¶ 62        I agree that section 116-4 is mandatory, but I do so for a reason that differs from that cited by the majority. Contrary to the view expressed by the majority, section 116-4 does not impose any consequence for noncompliance with the duty to

preserve evidence. That provision contains no negative language that can be construed as imposing a consequence for the failure to comply with its terms. Indeed, section 116-4 is entirely silent with regard to the impact of noncompliance.

¶ 63    Despite its recognition that courts will not add language to clear and unambiguous statutory provisions, that is precisely what the majority does in this case. The majority looks beyond the plain language of section 116-4 and finds that a consequence for violation of its terms is set forth in section 33-5 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/33-5 (West 2012)). To support its conclusion, the majority relies on the proposition that courts can consider other statutes when seeking to ascertain legislative intent. *Supra* ¶¶ 25, 35 (citing *Petterson v. City of Naperville*, 9 Ill. 2d 233, 243 (1956)). But that general rule of statutory construction has no application in this case.

¶ 64    In determining legislative intent, courts will look to related enactments only when the legislature's intent is unclear—such as where the statutory language is ambiguous. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 33; *In re Shelby R.*, 2013 IL 114994, ¶ 39; *People ex rel. Illinois Department of Corrections v. Hawkins*, 2011 IL 110792, ¶ 24; *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 509-12 (2007). Thus, a court may consider other statutes to ascertain the meaning or effect of ambiguous provisions but not to add new terms that do not exist in the statute. But a court " 'can neither restrict nor enlarge the meaning of an unambiguous statute.' " *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 23 (quoting *Petersen v. Wallach*, 198 Ill. 2d 439, 448 (2002)). Rather, the privilege of altering the language of a clear and unambiguous statute is reserved to the legislature.

¶ 65    Here, the majority concedes that the language of section 116-4 is clear and unambiguous (*supra* ¶¶ 24, 53) but fails to acknowledge that no consequence for noncompliance is identified within its terms. Nothing in the language of that provision references the possibility of a criminal prosecution under section 33-5 of the Criminal Code. Yet, the majority has injected a consequence into section 116-4 that the legislature did not include. This approach contravenes the principle that a court may not read into a statute limitations or conditions not explicitly set forth in the plain statutory language. *Riseborough*, 2014 IL 114271, ¶ 23.

¶ 66 Moreover, the majority's reasoning is unsound because it does not comport with our established precedent governing the mandatory-directory dichotomy. This court has recognized that directory commands have consequences, but the relevant inquiry is whether a specific consequence is triggered by noncompliance with the statute. *In re M.I.*, 2013 IL 113776, ¶ 16; *Delvillar*, 235 Ill. 2d at 515.

¶ 67 A prosecution under section 33-5 is a separate and distinct proceeding that is wholly unrelated to defendant's case. As such, it has no bearing on the proceedings in which the right applies. Section 116-4 proceedings relate to defendant's conviction and the posttrial right to assert a claim for actual innocence that is supported by the testing of preserved evidence. While a section 33-5 prosecution may be considered to be a consequence suffered by the law enforcement officer, it is not the type of consequence that serves to vindicate the right of defendants protected by section 116-4. The potential for prosecution of law enforcement personnel does not invalidate the governmental action to which the procedural requirement in section 116-4 relates. As the appellate court observed, that governmental action is the continued incarceration of defendant despite the deprivation of his right to posttrial testing of preserved evidence, which precludes the use of that evidence to support a claim of actual innocence. 2020 IL App (3d) 160758, ¶¶ 26, 28.

¶ 68 And the majority acknowledges that the focus of section 116-4 is on protecting the defendant's right to obtain posttrial testing of evidence. *Supra* ¶ 26. A criminal prosecution under section 33-5 does nothing to advance that statutory purpose. The legislature's recognition that official wrongdoing should be punished is laudable, but it does not incorporate a consequence within section 116-4 for the failure to preserve potentially exculpatory evidence. Therefore, the possibility of a criminal prosecution for intentional disposition of evidence, premised on section 33-5, is not a consequence for the violation of section 116-4. Rather, it is ancillary to the defendant's statutory right to seek forensic testing. Because a section 33-5 prosecution has no impact on the defendant's case or his right to obtain the testing of preserved evidence, the majority's conclusion is illogical.

¶ 69 Moreover, the majority's analysis is flawed because section 33-5 applies only where the disposition of evidence is intentional. 720 ILCS 5/33-5 (West 2012). But the intentional disposition of evidence is just one of two ways in which section 116-

4 can be violated. Section 116-4 prohibits any unauthorized destruction of evidence. It does not distinguish between intentional and unintentional conduct. In finding that the Criminal Code provides a consequence for the deliberate destruction of evidence, the majority ignores the fact that section 33-5 has no application in cases where evidence is unintentionally destroyed. Under the majority's reasoning, it appears that *half* of section 116-4 is mandatory. The court's decision does not explain how section 116-4 can be construed as mandatory in the absence of a consequence for unintentional disposition of evidence, nor does it offer any guidance as to how its interpretation would work in practice. The obvious answer is that it does not.

¶ 70                 V. Section 116-4 Is Mandatory Based on the Right Protected

¶ 71       As noted above, a statutory command will be construed as mandatory when the right the provision is designed to protect would generally be injured under a directory reading. *Robinson*, 217 Ill. 2d at 56. In this case, the right protected by section 116-4 is the right to obtain posttrial testing of evidence to support a claim of actual innocence. 725 ILCS 5/116-3, 116-4 (West 2012). The importance of that right and the injury that results from the failure to preserve evidence demonstrate that the legislature intended the terms of section 116-4 to be mandatory.

¶ 72       As noted by the appellate court, "section 116-3 has the unquestionable benefit of reducing the number of wrongfully convicted persons in prison," and "[s]ection 116-4 *** protects the efficacy of section 116-3 by ensuring that forensic evidence will actually be available for potential future testing." 2020 IL App (3d) 160758, ¶ 29. The appellate court also observed that "[t]he potential for exoneration afforded by section 116-4 vanishes when the government fails to comply [with section 116-4]." *Id.* ¶ 30.

¶ 73       Once evidence has been disposed of, no testing can be performed. The legislature has recognized the necessity for preservation of forensic evidence in the types of cases identified in section 116-4 precisely because the right to obtain posttrial testing is so important. I agree with the appellate court's observation that "[w]here the State illegally destroys evidence, that right is fully and irreparably extinguished. The harm cannot be overstated." *Id.* A directory reading of section 116-4 under which noncompliance could be excused would severely hamper the

right to posttrial testing. Strict enforcement of the duty to preserve evidence is essential to safeguard the integrity of the criminal justice system.

¶ 74　　The circumstances of this case illustrate the point. Defendant is forever prevented from exercising his right to posttrial testing because PPD illegally disposed of the evidence in his case. And the same would be true for other defendants, regardless of whether the disposition is intentional or unintentional.

¶ 75　　In light of the liberty interests at stake, section 116-4 must be construed as authorizing a remedy to defendants whose rights are infringed by the illegal disposition of evidence. Subjecting law enforcement personnel to the possibility of a criminal prosecution for the deliberate disposition of evidence may serve to deter such conduct. But it does not offer any relief to a defendant who is precluded from obtaining forensic testing of that evidence, nor does it serve the public's interest in having criminal charges fully and fairly adjudicated. See *id.* (citing *Wilkinson v. Ellis*, 484 F. Supp. 1072, 1084 (E.D. Pa. 1980)).

¶ 76　　In my view, this court should hold that section 116-4 is mandatory because it protects an important right and that defendant is entitled to a remedy for the violation of its terms. Such a construction would ensure that all of the provisions in article 116 come together in a cohesive whole by providing the full array of posttrial relief contemplated by the legislature.

¶ 77　　Given my disagreement with the majority on this issue, I strenuously urge the General Assembly to take additional steps to incorporate an explicit consequence within section 116-4 to safeguard the right to posttrial testing of evidence in the types of cases identified in that provision and to provide defendants a remedy when such evidence is disposed of by law enforcement personnel in violation of section 116-4. In addition, I encourage the legislature to specify that a violation of section 116-4 requires vacatur of the conviction of a defendant who has been denied the right to forensic testing of evidence that may form the basis of an actual innocence claim.

¶ 78　　　　　　　　　　　　　VI. Conclusion

¶ 79　　　　In sum, I disagree with the majority's holding that defendant is not entitled to vacatur of his conviction based on PPD's admitted violation of section 116-4. I cannot concur in the majority's conclusion that the possibility of a criminal prosecution for the intentional disposition of evidence constitutes a "consequence" of noncompliance with that provision. Rather, section 116-4 is mandatory because the right protected by that provision generally will be harmed by a directory reading. I agree with the reasoning expressed by the appellate court and would affirm that court's judgment. Accordingly, I respectfully dissent.

¶ 80　　　　JUSTICE CARTER took no part in the consideration or decision of this case.